| 66 | 189 |
| 80 | 486 |
| 66 | 189 |
| 82 | 462 |

MIGUEL MORALES V. J. N. FISK ET AL.

(Case No. 5826)

1. NEW CAUSE OF ACTION—A petition, asserting title in the plaintiff, and seeking a recovery in his right, was amended to assert title in an estate of which the plaintiff was administrator. *Held*, The amendment operated an abandonment of suit as first filed, and set up a cause of action in the estate.

2. PLEADING—PRACTICE—See facts for pleading held to set up good cause of action in favor of an estate. (Authorities cited.)

3. AMENDMENTS—NEW CAUSE OF ACTION—See opinion and facts for amendments held to set up no new cause of action, and to constitute no change in the character of the action.

4. EVIDENCE—TITLE—COMMON SOURCE—When both parties claim under a common source of title, rulings of the lower court upon evidence offered in relation to the acquisition of title by the common source, are of no importance so far as the rights of the parties are concerned.

5. LIMITATION—AMENDMENTS—Filing suit by the administrator in behalf of the estate will not stop running of limitation in favor of the occupant who continues in possession, as against the right of the person who was administrator.

6. LAW OF MEXICO—DONATIO CAUSA MORTIS—Under the law in force in the provinces of Mexico during the years 1832 and 1833, it was necessary that *donatio causa mortis* be solemnized with substantially the same formalities as testaments.

7. SAME—WITNESSES—The civil code now in force in Mexico continues that rule. Under it, if the donation should be of real estate, it can only be made by a public writing, whatever may be its value. It was necessary that such a donation be made before three, five or seven witnesses, as circumstances required. Women could not be witnesses to authenticate such a disposition of property. (Authorities cited.)

8. TITLE—LIMITATION—CHARGES—See opinion and facts for charges on title and limitation held correct, and for charges properly refused.

APPEAL from Bexar. Tried below before the Hon. Geo. H. Noonan.

This was an action of trespass to try title. It was before this court at a former term and was reported in 43 Tex., 340.

On February 15, 1855, J. N. Fisk filed his petition in the district

court of Bexar county, Texas, in which he represented that he "is seized and possessed of a certain tract or parcel of land," describing it, and that "one Maria Flores and one Miguel Morales did, on or about March 1, enter upon the lot, and have committed various and divers trespasses upon the same, etc., and still continue to commit other trespasses, etc., to the damage of your petitioner, $500," and prayed that Flores and Morales be made parties defendant to the petition, and that they be cited to appear at the next term of the court and answer the petition; and that after a due hearing of the rights of the parties, title to the lot be adjudged in petitioner; that he have judgment for all damages so sustained by the trespass, and prayed also for a writ of possession.

On March 9, 1855, the defendants answered and pleaded not guilty, and the statute of limitations of ten years. On April 26, 1856, plaintiff filed an amendment to his petition and represented that he sued as administrator of the estate of Guadalupe Ruiz y Smith, deceased, and that the land described in the petition was the property of decedent at the time of her death, and had afterwards been the property of her estate and in his possession as administrator. On March 3, 1869, plaintiff again amended as follows :

"Now come J. N. Fisk and Simana Fisk, his wife, and ask the court to prosecute the suit in their names; that they are the legal and equitable owners and *holders* of the land in their own right, as parties plaintiff and subrogated to all of the rights of the original plaintiff and for general relief."

On February 6, 1872, plaintiff, J. N. Fisk, again amended, and "says that his wife, Simana Fisk, is a party in interest in this suit, and he prays that she be joined as a party plaintiff and prosecute this suit in their joint names, and they aver that they were the legal and equitable owners of the land set forth in the plaintiff's original petition long anterior to the institution of this suit, to-wit, since October 4, 1840; and they further claim title under the statute of ten years limitation, and pray to be quieted in their title, and for a writ of restitution, and that the title of defendants be cancelled, etc."

On February 6, 1872, defendants demurred to plaintiff's amended petition and pleaded the statutes of limitation of three, five and ten years, and suggested permanent improvements. On March 16, 1885, Simana Fisk, for herself and as surviving wife of James N. Fisk, deceased, and as next friend for his minor children, and also the other plaintiffs in this suit, again amended their petition by filing a regular suit in "trespass to try title," and for damages. To this amended original petition defendant, Miguel Morales, excepted and pleaded not

guilty, and also pleaded the statutes of limitation of three, five and ten years.

It was admitted that all the title of Maria Flores to the property in question was vested in Miguel Morales. The cause coming on to be heard, and having been submitted to the jury, under the charge of the court, they found in favor of the plaintiffs, and a judgment for plaintiffs was rendered on the verdict. The ninth, tenth and eleventh assignments of error were as follows:

"The court erred and misdirected the jury in the first and second paragraphs of its instructions given to the jury of its own motion, in this, that the same mis-state the pleadings in the cause."

"The court erred and misdirected the jury in the third paragraph of its instructions given to the jury of its own motion, in this, that it described a deed not in evidence before the jury, and gave a wrong interpretation of the one which was in evidence, and failed to give its proper legal construction."

"The court erred, and misdirected the jury in the fifth paragraph of its instructions, given to the jury of its own motion, in this, that it thereon and thereby charged the jury that the paper introduced as a testimonio of a grant by Governor Martinez, together with the testimony in relation thereto, may be considered by you, in order to ascertain if the paper, and the evidence regarding it, and also the testimony relating to any possession of the property pursuant to the testimonio, and in this, that such paragraph is incoherent, inconsequent, illogical and inconclusive, and intended to mistify, mislead and confuse the jury, and induce them to take the unsigned, unexecuted instrument as sufficient to prove a grant of the demanded premises, the court having utterly failed to construe or interpret such instrument as required by law."

The charges of the court complained of in those assignments were as follows:

1. "The plaintiff brings this suit to recover a certain lot in the city of San Antonio that is claimed under a grant from the government."

2. "The defendants plead not guilty, and also plead the statutes of limitation of three, five and ten years. They claim title also under a deed from Dolores Ocon to Francisco Chavez, dated January 28, 1834."

3. "The deed from Maria Sebastiana Vela to Guadalupe Ruiz, dated August 4, 1840, is in evidence before you, and contains a description of the property claimed by the plaintiff."

5. "The paper introduced as a testimonio of a grant by Governor Martinez, together with the testimony in relation thereto, may be considered by you in order to ascertain if the paper and the evidence

regarding it, and also the testimony relating to any possession of the property pursuant to said testimony."

The first instruction asked by defendant, and refused by the court, was: "* * * and the jury are instructed that as to the action by and in the name of the administrator, limitation could not be arrested until the filing of said amendment."

The second, third and fourth instructions asked by defendant, mentioned in the opinion, related to the effect of the several amendments filed by plaintiffs upon the cause of action, in connection with the statutes of limitation.

The sixteenth instruction asked by defendant, and refused, was as follows : "The deed from Maria Sebastiana Vela to Guadalupe Ruiz, dated August 4, 1840, conveys the granted premises in it as a lot situated in the suburbs of the Villeta of this city, and described as follows: Its front of thirty varas to the east, on which side it is bounded by the street that goes out to the road that leads to the ex-missions, and fifty varas depth to the west, where it is bounded by the ditch called de los Pajalaches; bounded on the north by the Calle Nueva, and on the south by land of Maria Roblo. It was and is the intention manifested in this deed, to convey a lot fronting thirty varas on Presa street, a street leading out to the mission road, and running back fifty varas; and if you find that Francisco Chavez had possession, in person, or by tenant, of the land on the east bank of the Pajalaches ditch when this deed was made, and that there was fifty varas in length to the east of his possession, and between it and the Presa street, and that the full complement of fifty varas so remained outside of any adverse possession, then the deed will be held to embrace and convey, and the purchaser named therein to have purchased, such fifty varas in length and thirty varas in width. And, if you find, from the evidence, that plaintiffs are in possession of the fifty varas, or more, in depth west from Presa street, and that the deed from Vela to Ruiz can be fitted to such fifty varas in length without including any portion of the defendant's possession, then your verdict should be in favor of the defendant.

The eighteenth, nineteenth, twentieth and twenty-first instructions asked, and refused, were : " You are instructed that the acquiescence of the proprietors of adjoining lands in a particular line may be received as evidence to determine their boundaries." "If you find, from the evidence, that Guadalupe Ruiz acquiesced in a particular line, or fence, as the boundary between her possession and that of Chavez, after the date of the deed from Vela to her, and while she occupied her parcel under such deed, and that she and Chavez were each possessed of

their respective parcels of land adjoining each other, during such acquiescence, then those claiming under said Guadalupe Ruiz, by inheritance, or by purchase since such acquiescence, will be bound by the boundary so adopted by the former proprietors." "If you find from the evidence that Maria Sebastiana Vela acquiesced in a particular line or fence, as the boundary between her and Chavez, prior to the date of the deed from her to Guadalupe Ruiz, and that she and Chavez were possessed of their respective parcels of land adjoining each other during such acquiescence, and that such acquiescence continued until she sold to Ruiz, then Ruiz, and those claiming under her, will be bound by the boundary so adopted by the former proprietors." "If you find, from the evidence, that a boundary was adopted, by the acquiescence of the former proprietors, between the parcel of land claimed by Chavez and that claimed by Vela, and after her by Ruiz, and that such boundary, so established, embraces the demanded premises within the parcel possessed by Chavez, and excludes the same from the parcel possessed by Vela and Ruiz, then you will find a verdict for the defendant."

The twentieth-sixth instruction asked by defendant, but refused, was as follows:

"If you find, from the testimony, that the defendant had peaceable and adverse possession of the property sued for, cultivating, using or enjoying the same, and paying taxes thereon, claiming under a deed or deeds, duly registered, for the five years next before the filing of the amended original petition, filed April 26, 1856, you will find a verdict in favor of defendant."

The twenty-eighth, twenty-ninth and thirtieth instructions asked were refused, because based upon an incorrect theory of the effect upon the cause of action of certain amendments to the petition in connection with the statutes of limitation.

*Coopwood & Coopwood* and *L. N. Walthall*, for appellant, on the points discussed in the opinion, cited: Hopkins *v.* Wright, 17 Tex., 35; McClenney *v.* McClenney, 3 Tex., 195; McIlhenny *v.* Lee, 43 Tex., 209, 210; Williams *v.* Randon, 10 Tex., 79; Henderson *v.* Kissam, 8 Tex., 46; Haskins *v.* Wallet, 63 Tex., 213; Hatchett *v.* Conner, 30 Tex., 109; Word *v.* McKinney, 25 Tex., 267; Escriche, Verbo Instrumento Publico, 111, latter part of law 144, tit. 18, part 3; Paschal *v.* Perez, 7 Tex., 356; Bradshaw *v.* Mayfield, 24 Tex., 482; Proffat on Trials by Jury, secs. 312, 313, 319; Dassler *v.* Wisley, 32 Mo., 498; Grout *v.* Nichols, 53 Me., 383.

*Simpson & James,* for appellees, cited: Murphy *v.* Coffee, 33 Tex., 510; P. D., 4636; 13 Tex., 628; 24 Tex., 304; 7 Tex., 200; Smith *v.* McGaughey, 13 Tex., 464; Rule 17; 57 Tex., 613; 5 Tex., 375; 50 Tex., 325; Herndon *v.* Casiano, 7 Tex., 333; Lewis *v.* City of San Antonio, 7 Tex., 238; Paschal *v.* Perez, 7 Tex., 349; Fisk *v.* Flores, 43 Tex., 340, and cases cited; Schmidt's Civil Law, 216; 2 Moreau's Partidas, 961, 963; Johnson's Civil Law, 173; Colquhoun's Roman Law. secs. 1069, 1070, 1071; Escriche, 569.

STAYTON ASSOCIATE JUSTICE.—Looking to the averments of the petition filed by J. N. Fisk on February 15, 1855, it is clear that the petition filed by him on April 26, 1856, set up a new cause of action. The petition first filed alleged that he was seized and possessed of the land, and, in his own right, sought a recovery, while the latter asserted a title in the estate of M. Guadalupe Ruiz y Smith, in his possession, as the administrator of her estate. Whatever may have been the right of J. N. Fisk in the land at the time he brought the suit, it is evident that under the amendment he could not have been heard to assert title in himself.

The amendment operated an abandonment of the suit in his own right and set up a cause of action in the estate of which he alleged that he was the administrator. He thus asserted a different right, a new cause of action, and this operated as an abandonment of the cause of action set up in the original petition. The amendment filed on April 26, 1856, set up a good cause of action in favor of the estate of Guadalupe Ruiz y Smith, which, as administrator, J. N. Fisk could prosecute. Thompson *v.* Duncan, 1 Tex., 487; Menard *v.* Republic, 2 Tex., 311; Graham *v.* Vining, 2 Tex., 440; Shannon *v.* Taylor, 16 Tex., 413.

The amendment filed March 3, 1869, but alleged that J. N. and Simana Fisk had succeeded to the right asserted by the former pleading, and asked to prosecute in their own names the right thus asserted. This did not change the cause of action, but simply made new parties to it. The amendment of date, February 6, 1872, simply asserted that Simana Fisk was interested in the subject matter of the action, and prays that she be permitted to join as a plaintiff.

On March 16, 1885, Simana Fisk suggested the death of her husband and co-plaintiff, J. N. Fisk, and, amending the pleadings, asked to be permitted in her own behalf, and as the surviving widow of J. N. Fisk, and as next friend for his minor children, to prosecute the action. That amendment shows that the parties made plaintiffs were the heirs of Guadalupe Ruiz y Smith as well as of J. N. Fisk, and that the right which they assert is the same as that set up in the amendment filed by Fisk on April 26, 1856.

This last amendment contains the following averments: "That on March 1, 1854, the estate of Guadalupe Ruiz, of which the said James N. Fisk was then administrator, he having been appointed such by the honorable county court of Bexar county, at the May term, 1849, was seized and possessed, and the owner in fee simple, of a certain tract or parcel of ground (here describing that in controversy). That on that date the estate of Guadalupe Ruiz and the heirs thereof, whose several interests are now held and owned by these plaintiffs, who are also the heirs and descendants of Guadalupe Ruiz, were in possession of the lands, and that afterwards, on the same day, March 1, 1854, the defendants in this suit * * unlawfully entered upon and dispossessed them of a portion of said premises, * * * and with force and arms did take possession thereof, and still withhold from plaintiffs the possession thereof," etc.

To the last amendment the defendants, by demurrer, interposed the statute of limitation as a defense, upon the theory that it set up a new cause of action, and on its face, showed that the defendant had held an adverse possession from March 1, 1854. This demurrer was properly overruled, for it is too evident that the same cause of action was asserted by the last amendment as was by the amendment filed April 26, 1856. New parties were made from time to time, as it became necessary, but the same right and title was asserted under all the petitions except the first.

Simana Fisk was a daughter of Guadalupe Ruiz, as was a former wife of James N. Fisk, hence had an interest as heir, as had the children of her deceased sister, and for this reason was probably made a party plaintiff in the first instance.

It is also shown by the record that some of the other heirs of Guadalupe Ruiz conveyed their interest in her estate to Simana Fisk, or to the community of which she was a member, before the amendment of April 26, 1856, was filed; but this could not affect the right of the administrator to prosecute the action.

There was no change in the character of the action at any time; it was essentially an action to try title from its inception.

Maria Ines de Los Santos is the common source of title, and the rulings of the court below in reference to the admission of evidence, written or oral, for the purpose of showing that the lot in controversy was granted to her as early as the year 1818, presented by the second, fourth, fifth, sixth, seventh, eighth, thirty-third and thirty-fifth assignments of error, are of no importance whatever in the determination of the rights of the parties.

If, under the undisputed facts, the court had instructed the jury that

title vested in Maria Ines de los Santos, this would give no ground for complaint to the appellant. He is not in a position to deny that title. There was no error in the charges referred to in the ninth, tenth and eleventh assignments of error. That part of the sixth paragraph of the charge given by the court, which, in effect, made the filing of the original petition by Fisk, on February 15, 1855, operate to interrupt the running of the statutes of limitation in favor of the defendant, was not correct, for it ran, if there was an adverse possession by the defendant, until the filing of the amended petition, on April 26, 1856, which, of itself, operated as an abandonment of the former action. This charge, in all other respects, was correct, and whether the error here referred to requires a reversal of the judgment will be hereafter considered.

The plaintiffs show a regular chain of title from Maria Ines de los Santos, such as entitles them to recover, unless this is defeated by limitation, or by proof showing that Madame de los Santos transferred the property to Dolores Ocon, through whom the defendant claims. It is claimed that Madame de los Santos, on her death-bed, in the year 1832, or 1833, made a verbal donation of the lot to Dolores Ocon. The facts proved are not of such character as to show a verbal sale of the lot, and are such as to preclude the belief that it was the intention of Madame de los Santos to make a *donatio inter vivos.* Waiving consideration of the power of Madame de los Santos to make a donation of the entire property in any manner, and waiving a consideration of her power to make a verbal donation of land, and holding that there is no evidence sufficient to show a verbal sale, or a donation *inter vivos,* it remains to inquire whether the facts proved show a valid execution of donation *causa mortis.* To be valid, as such, it must be shown that it was executed, solemnized, in accordance with the requirements of the laws then in force. It is claimed that the lot was verbally donated to Ocon during the last illness of Madame de los Santos, and but a short time before her death; and that this occurred in the presence of six persons, four of whom were women, and one of them the wife of Ocon.

It appears that under the law in force at the time the donation is claimed to have been made, it was necessary that *donatio causa mortis* should be solemnized with substantially the same formalities as testaments. 2 Febrero Ref., sec. 2023; 1 Alvarez Derecho Real, 197; Moreau & Carleton's Partidas, part 5, title 4, law 11; Colquhoun's Roman Civil Law, 1070, 1072; Donati Civil Law, 3481.

This rule was continued in force by the civil code enacted by the federal government of Mexico, which is in force in all but two of the Mexican states, and went into effect March 1, 1871. Hall's Mexican Law, 2867. This code expressly provides that "if the donation should

be of real estate, it can only be made by a public writing, whatever may be its value." Hall's Mexican Law, 2870, 2873. That such a donation ought to be made before three, five or seven witnesses, as the circumstances of its making may require, seems settled. Escriche. ".Donacion por cause de Muerte, Testamento Aburte." 1 Alvarez Derecho Real, 197, 212; 2 Febrero Ref., 3023; Moreau & Carleton's Partidas, p. 5, t. 4, l. 11; Johnson's Civil Law of Spain, 110; Schmidt's Civil Law of Spain and Mexico, 1011, 1015; 2 Colquhoun's Roman Civil Law, 1070, 1072.

Four of the persons who were shown to have been present at the time it is claimed the donation to Ocon was made were women of the family of Madame de los Santos, and it seems that women could not be witnesses to authenticate such a disposition of propertey. Moreau & Carleton's Partidas, p. 3, t. 16, l. 17; *Ib.*, p. 6, t. 1, l. 10; 1 Alvarez Derecho, Real, 213; Colquhoun's Roman Civil Law, 3053; Johnson's Civil Law of Spain, 111; Schmidt's Civil Law of Spain and Mexico, 1021.

This rule in reference to wills is retained in the Mexican civil code before referred to, (Hall's Mexican Law, 3414, 3461) as is the rule in reference to the number of witnesses required. The other two persons present were the son and grandson of Madame de los Santos, and, as thier number was insufficient, it is unnecessary to consider whether they were competent witnesses. The court instructed the jury that "the proof relating to a testamentary donation by Maria Ines de los Santos to Dolores Ocon is not sufficient in law to vest title to the property in question in Dolores Ocon." And it is urged that this was error. Under the evidence the court was authorized to assume that the donation claimed to have been made was testamentary, and to declare that there was no sufficient proof to show that it was made under formalities necessary at the time to give it validity.

The sixth instruction asked, and refused, would have led the jury to believe that there was evidence from which they might find that a valid donation was made, and, for this reason, was properly refused. The fifteenth instruction asked was properly refused for the same reason.

The seventh, eighth, ninth, tenth, eleventh, twelfth and thirteenth instructions asked were also properly refused, for they were all based on the idea that title passed by the several conveyances referred to in them, when there was no foundation for this, all the conveyances referred to being in the chain of title from Ocon. Ocon having no title, those deriving title through him could have none, by reason only of the conveyances referred to. The conveyance, referred to in these instructions were admissible only for the purpose of showing privity

of possession under the pleas of limitation, and it would have been proper for the court to have instructed the jury upon this point.

The first instruction asked, which related to the effect of the filing of the first amended petition upon the running of the statute of limitation, was correct, and should have been given.

The second, third and fourth instructions asked, for reasons before given, were properly refused.

The fifth instruction asked had been given in the charge of the court, and to have given it again in connection with those which immediately preceded it would have been calculated to mislead.

The evidence, taken in connection with the pleadings, left no doubt as to the identity and extent of the lot claimed by the pleadings, and to have given the instruction asked in the sixteenth paragraph would have made the length of lines called for to control other calls, which should, in such cases, be given a controlling effect.

The seventeenth charge requested made the title of the appellees to depend on the fact that a former owner had once recognized the ownership of Chavez, and made that fact conclusive of the rights of the parties. We know of no such rule of law.

The eighteenth, nineteenth, twentieth and twenty-first instructions asked, with some qualifications, would have been proper had the issue between the parties been only one of boundary, but they could have but little application when the issue was as to title, and were, therefore, properly refused.

The twenty-second, twenty-third and twenty-fourth instructions asked related to the time at which this action suspended the running of the statute of limitation, and, for reasons before given, were properly refused.

The twenty-fifth and twenty-seventh instructions asked were given, in effect, in the charge of the court which we have held was erroneous.

The twenty-sixth instruction asked, so far as we can see from the record before us, ought to have been given. If there existed any fact which prevented the running of the statutes of limitation before April 26, 1856, it is not made to appear. There was no replication to the answer setting up the defense of limitation alleging facts which would prevent its running.

The twenty-eighth, twenty-ninth and thirtieth instructions asked were properly refused for reasons before given.

The thirty-first instruction asked had no application to the case made on the last trial, and if given could not have affected the case, for Sebastiana Vela took, as heir of her mother, and those claiming under her were entitled to recover against one having no title.

The thirty-second assignment of error has no application whatever to the thirty-first charge asked, the refusal to give which is the ground of this assignment.

There was, as before said, error in the charge of the court as to the period at which the statutes of limitation ceased to run in favor of the defendant, and the evidence is conflicting as to the occupation of the premises by the respective parties.

From an inspection of the evidence we cannot say that the jury might not have properly found a verdict in favor of the defendant under a proper charge. The cause is one of long standing, and the parties have indicated a desire that it should now end; but, as the case was tried before jury, and there was error committed which may have influenced their finding, the judgment will have to be reversed and the cause remanded.

There is but one question in the case as it is now presented, which is: Was the right of the plaintiff barred by limitation on April 26, 1856? The case should be tried upon this issue.

It is ordered that the judgment be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered May 7, 1886.]