THEODORE C. BECKER ET AL. v. GULF CITY STREET RAILWAY AND REAL ESTATE COMPANY ET AL.

No. 3030.

1. **Amendment—Same Cause of Action—Limitation.**—Suit of certain stockholders in a private corporation against the directors of the corporation, the other stockholders, and against others interested in the matter of litigation. The petition charged that the directors in fraud of their trust had consolidated and merged its existence in another competing but insolvent corporation, misusing the revenues of the corporation and parting with the possession of its property, endangering its corporate existence, etc. Prayer for a receiver and a recovery in behalf of the plaintiffs, and for general re-

lief. By amendment relief was asked in name of the corporation. In the amendment specific acts were given in addition to general allegations in original. *Held,* that as all the parties were before the court, and no new facts alleged by amendment, and as the relief requested was substantially the same in the amendment, such amendment can not be held as making a new party or alleging a new cause of action to which limitation could be pleaded.

2. Receiver—Practice—Limitation.—It seems that limitation of two years would not conclude the right to have a receiver appointed if the facts otherwise require such control of property in litigation. The refusal by the trial court to appoint a receiver would not affect the power on final trial to make such appointment when called for by the facts.

3. Suit by Stockholders.—One or more stockholders can maintain a suit for the benefit of the corporation against its directors for not carrying out the purposes of the organization and for abandoning the duties of their offices. It seems that relief would be secured by such suit equally if the prayer in their petition was for individual relief as if for relief in name of the corporation.

4. Same—Pleadings.—The petition alleged acts denounced as gross wrongs and acts *ultra vires* by the directors. Such allegations rendered unnecessary an allegation of failure to obtain relief and redress from and within the corporation through its officials.

5. Trust—Limitation.—While limitation will run in favor of a trustee after his repudiation of his trust, still such repudiation must be made known to the beneficiary or the beneficiary be charged with notice. A fraudulent concealment of an act subversive of his trust would prevent the running of limitations in his favor. See example.

APPEAL from Harris. Tried below before Hon. James Masterson. The opinion contains a statement.

*Wharton Branch, Gustave Cook,* and *Howard Finley,* for appellants.— 1. Where one company enters into an illegal transaction with another and makes an illegal payment of its funds in respect of such transaction, a stockholder seeking to have the money restored to the funds of his own company is entitled in his name to maintain a suit against both companies for that purpose. Solomons v. Loring, 6 Eng. Railway and Canal Cases, 303; Am. Dig., 1889, pp. 739, 740; Byers v. Rollins, 21 Colo., 895; Averill v. Barber, 9 N. Y., 255; Rathbone v. Gas Co., 31 W. Va., 798; Rothwell v. Robinson, 39 Minn., 1; Town Company v. Brower, 80 Ga., 258; Am. Dig., 1888, pp. 235–239.

2. A stockholder will be allowed to file a bill in his own name, and others standing in his same attitude, to compel the ministerial officers of the corporation to account for a breach of official duty and for the misapplication of corporate funds. Heath v. Railway, 8 Blatch., U. S. C. C., 47; Lacey's Dig., vol. 1, p. 638; Railway v. Railway, 12 Allen (Mass.), 262; Railway v. Railway, 32 Barb. (N. Y.), 358; Brooklyn City v. Railway, 32 Barb., 364.

3. It is the undoubted right of each shareholder to prevent the directors from exceeding their authority, and an action by a stockholder to restrain transactions which are *ultra vires* may be maintained. Felden

v. Railway, 1 Hening & Miller Eng. Ch., p. 489; Dupont v. Railway, 18 Fed. Rep., 467.

4.   Where the bill shows a condition of things such as would have rendered an application to the board of directors to bring the suit an idle ceremony, a case is presented requiring the defendants to answer. Tazewell County v. Loan and Trust Co., 12 Fed. Rep., 752.

5.   The statutes of the State prohibit the company sought to be placed under a receivership under its own petition, but a stockholder may do so.   A court of equity would adjust and dispose of all questions of damages involved in the suit.   Rev. Stats., art. 1480.

*James B. & Charles J. Stubbs,* for appellees.—1. A petition by a stockholder in a corporation for a recovery of damages for the wrongful acts of the directory, not in behalf of the corporation but for himself individually, is not maintainable.   Unless the suit is brought for the use and benefit of the corporation, a demurrer should be sustained. Evans v. Brandon, 53 Texas, 56; Cates v. Sparkman, 73 Texas, 619.

2.   The District Court had the right to set aside its former rulings on the demurrers to the second amended petition and order a reargument, and it was its duty to do so if in doubt as to the correctness of its previous decision.   Should a fuller examination of the question lead to a different conclusion it should. be made the judgment of the court.

3.   The petition did not show any proper or sufficient effort to obtain redress for the wrongs or grievances complained of.

(1) It did not allege any application to the board of directors for authority to bring this suit.

(2) It did not set forth any clear or definite request to the directory to take any action of any kind.   The averments in that regard are vague and general, and are mere conclusions of the pleader and not such statements of fact as are sufficient upon special exception.

(3) It did not aver any attempt to have the alleged wrongs righted by the stockholders, nor any excuse for a failure to have such action taken or to apply therefor.

(4) The law is as stated by the Supreme Court of the United States in the case of Hawes v. Oakland, 104 U. S., 450:   "In addition to the existence of grievances which call for this kind of relief, it is equally important that before the shareholder is permitted in his own name to institute and conduct a litigation which usually belongs to the corporation he should show to the satisfaction of the court that he has exhausted all the means within his reach to obtain within the corporation itself the redress of his grievances or action in conformity to his wishes.   He must make an earnest, not a simulated, effort with the managing body of the corporation to induce remedial action on their part, and this must be made apparent to the court.   If time permits, or has permitted, he must show, if he fails with the directors, that he has made an honest effort to

obtain action by the stockholders as a body in the matter of which he complains. And he must show a case, if this is not done, where it could not be done, or it was not reasonable to require it." Detroit v. Dean, 106 U. S., 537; Brewer v. Theatre, 104 Mass., 378.

Merchants' and Planters' Line v. Waganer, 71 Alabama, 581, approves the views of the United States Supreme Court, and adds: "A corporation to attain the highest success should, like a family, dwell together in unity. And when disputes arise between members of this body politic, or law-created household, they should, if possible, be adjusted among themselves. It should be a strong case to justify resort to personal litigation."

Again, quoting from Manufacturing Company v. Cox, 68 Alabama, 71: "In the government of corporations much must be left to the judgment and discretion of the directory and much must be credited to the fallibility of the human judgment. If it be supposed an unwise course is being pursued, or that the interests of the corporation are suffering or likely to suffer through the inefficiency or faithlessness of an official, an appeal should first be made to the directors or governing body to redress the grievance. Failing there, in ordinary cases the next redress will be found in the power of the ballot." Rathbone v. Gas Co., 31 W. Va., 798.

Where it is practicable to call upon the stockholders to act, this must be done. "Even where the directors are at fault it does not necessarily follow that the corporation is disabled from procuring justice for itself; for the majority of the shareholders in corporate meeting have supreme authority under the charter to manage the corporate affairs. Whenever it is possible to obtain justice by calling a meeting of the shareholders and removing the offending officers and electing new ones this remedy must be pursued. In such cases a shareholder can not sue in equity, since the ground for relief fails, namely, that the corporation, his trustee, is unable to protect the trust."

Boyd v. Sims, 11 Southwestern Reporter, 948, was a case in which plaintiffs "protested" against the course pursued, but it did not appappear that they asked that suit be brought, or that they appealed to the stockholders. Held, the bill was demurrable. This case is also reported in 26 American and English Corporation Cases, 106, and the annotation contains some excellent references. Coggswell v. Bull, 39 Cal., 320.

4. The court did not err in adjudging the cause of action barred by limitation, for the amendment seeking recovery on behalf of the corporation operated as an abandonment of the suit as first filed, which was brought by plaintiffs as of their own right and for their own exclusive benefit. Under the decision in Evans v. Brandon, 53 Texas, and other cases which we have cited, no cause of action was stated in the original petition and its first amendment. Not until plaintiffs al-

tered the capacity in which they sued from a personal to a representative one, and acted as or for the corporation, did they state a case not subject to demurrer. As individuals they could not sue; as the representatives of the company, assuming that relation because of the disregard of duty of its chosen trustees and the other corporators, they were, in a proper case, empowered to resort to the courts. Unless they demanded the corporation's rights for the corporation, the courts could take no cognizance of their quarrels. Morales v. Fisk, 66 Texas, 189; Railway v. Culberson, 72 Texas, 375; Hopkins v. Wright, 17 Texas, 30.

MARR, JUDGE.—The appellant T. C. Becker and the thirty-two other plaintiffs named in the petition, "own and represent one hundred and ten shares of the capital stock of the Gulf City Street Railway and Real Estate Company, and all of said stock so owned by plaintiffs is legal and valid stock of said company." This is admitted by the demurrers.

"This suit was instituted by plaintiffs as shareholders of the Gulf City Street Railway and Real Estate Company, of Galveston, Texas, in the District Court of Galveston County, against defendants, alleging a fraudulent combination and conspiracy between the defendants representing said Gulf City Street Railway and Real Estate Company and the Galveston City Railway Company, also of Galveston, Texas, by means of which they had fraudulently and unlawfully seized and taken possession of the rights, properties, and franchises of the Gulf City Street Railway and Real Estate Company of the value of $300,000, appropriated and converted the same to their own use and benefit, and had transferred and consolidated said Gulf City Street Railway and Real Estate Company with said Galveston City Railway Company, contrary to law and to the terms and conditions of the charter and grant of the said franchise of the Gulf City Street Railway and Real Estate Company under the ordinances of the said city of Galveston, and praying for a receiver for the said Gulf City Street Railway and Real Estate Company. The original petition was filed on May 29, 1888, and an amended original petition was filed on May 9, 1889. Defendants answered by demurrer, and the court sustained the demurrer so far as to deny the plaintiffs damages and overruled the same as to the application for a receiver.

"On July 22, 1889, the venue of said suit was changed to the District Court of Harris County on application of plaintiffs. On November 2, 1889, in the District Court of Harris County defendants filed first amended original answer, On August 10, 1889, the District Court of Harris County denied the receivership, and on May 15, 1890, sustained the exceptions of defendants to plaintiffs' petition," and dismissed the suit.

Before this action of the court in sustaining the exceptions finally as above stated, which exceptions were to the second amended original petition filed by plaintiffs on the 10th day of January, 1890, the District Court of Harris County had at a former term, upon similar demurrers of the defendants, adjudged this amended petition to be sufficient. The court had the right to reconsider its action on the demurrers, as the former order overruling them was not final.

The first amended original petition of the plaintiffs is not contained in the transcript, but a copy of it has been filed with the record by leave of the Supreme Court and has been considered by us.

As the plaintiffs took leave to amend and did amend their pleadings after the demurrers were in part sustained by the District Court of Galveston County, and again in substance set up the same grounds of action but more fully, as we have said, we deem it important to discuss separately, under the first assignment of error, the rulings of that court upon the demurrers to the first amended original petition. Our views on that subject will be sufficiently indicated in the consideration of the action of the District Court of Harris County in sustaining certain special exceptions interposed by the defendants to plaintiffs' second amended original petition and in dismissing the suit upon the declination of counsel for plaintiffs to further amend. In addition to the statement already given of the contents of the first amended petition, which as we have said are also substantially the contents of the second amended petition, this latter petition charged more fully, perhaps, the fraudulent seizure and appropriation and conversion of the property rights and franchises of the Gulf City Street Railway and Real Estate Company and the fraudulent and illegal transfer thereof, by J. H. Burnett and others, assuming to represent the Gulf City Street Railway and Real Estate Company, to the Galveston City Railway Company.

The petition of plaintiffs alleged a breach of official duty and a misapplication and appropriation of corporate funds.

This "petition alleges that the entire property and franchises of the Gulf City Street Railway and Real Estate Company were undertaken to be transferred by J. H. Burnett and others to the Galveston City Railway Company in violation of its charter and in violation of the ordinances of the city of Galveston in granting its franchises," and that said parties, at least as the *de facto* officers of said company, had without the consent of the plaintiffs consolidated the company with the Galveston City Railway Company, another distinct corporation, engaged theretofore (October 24, 1887) in the same business but as a competitor with the first named company, etc. That these officers had turned over nearly all of the property to the latter company, which had appropriated it as well as the other property of plaintiffs' company seized by defendants with the consent of said officers; that said officers surrendered their stock in the first named company to the lat-

ter company in violation of its charter, and accepted in lieu thereof stock in the latter company issued by it to them; that the interest of said directors and officers is entirely adverse to the plaintiffs and to the Gulf City Street Railway and Real Estate Company, and identical with that of the Galveston City Railway Company, and that they are disqualified from representing the first named company. Specific acts of fraud, which are admitted on demurrer, are alleged against the president of the plaintiffs' company in creating alleged bogus and fictitious debts in his own favor in large amounts against the company, and that he issued to himself evidences thereof and fraudulently induced the secretary to attest the same, and in appropriating fraudulently to his own use many thousands of dollars of the revenues of the company, etc. All of these matters are particularized in detail in the petition, and great damage is shown to have resulted to the company and the stockholders by reason thereof. It would occupy too much space to attempt even to summarize them all. In short, it appears from the petition that by the fraudulent and unauthorized acts of the officers of the Gulf City Street Railway and Real Estate Company the Galveston City Street Railway Company has been allowed to take possession of all the property and franchises of the Gulf City Street Railway and Real Estate Company, and ever since the 24th day of October, 1887, to exclusively occupy, use, and enjoy the same, and to collect and appropriate the earnings and revenues thereof, amounting to $3000 monthly; that that company is insolvent, and plaintiffs' company, on account of its illegal connection therewith, is liable to become so, and is in imminent danger of having its charter forfeited and of losing all of its franchises and charter rights and privileges, which have been illegally violated in the manner aforesaid, etc.

In the original suit all persons interested in this suit were made parties hereto, and there were no new parties made by the amendment, nor, as we think, any new cause of action, as we shall hereafter endeavor to show.

We agree in the main to the following statement of appellants' counsel:.

"The petition of plaintiffs together with its exhibits show that proper effort was made and demand upon the acting management of the road, and that no proper attention was given to such demand, and it would have been an idle ceremony for petitioners to apply to the assumed management of the Gulf City Railway and Real Estate Company for any redress" under the circumstances.

The following are the special exceptions of the defendants that were sustained to the second amended petition, in effect, viz.: "Because said second amended original petition does not show any or a sufficient effort on part of the plaintiffs to obtain redress of the alleged wrongs from and within the corporation in which plaintiffs are stockholders

before bringing this suit; and because said amended petition set up for the first time a new cause of action in asking a recovery on behalf of and for the benefit of the corporation, the same being a cause of action in a new capacity, which cause accrued more than two years before the filing of said amended original petition, and is barred by limitation."

Although we have already consumed considerable space in the statement of the case, the importance of the rights involved as well as the apparent magnitude of the interests at stake require that we shall give even a more extended exhibit of the true condition of the record, that we may not do injustice to either party or to the court below. Both of the amended petitions also alleged "that as a shareholder of and in said Gulf City Street Railway and Real Estate Company, plaintiff T. C. Becker, acting for himself and in behalf of other shareholders of said company, did on the 5th day of March, 1888, give notice in writing to said company (referring to Exhibit 'E') and asked and demanded of said Burnett (the president) and said pretended directors that the business and management of said company be placed upon its former footing as it was before the transfer of the management of the same to the said Galveston City Railway Company, and that action be taken to carry the same into effect."

Then follows a statement of facts showing in effect that said officers entirely ignored the request. And again: "That there are no other officers or stockholders to apply to for any redress for the wrongs and injuries herein complained of other than defendants." "Plaintiffs further aver in the second amended petition that this suit is brought in the behalf of and for the benefit of said Gulf City Street Railway and Real Estate Company for the recovery of," etc. "Plaintiffs further aver that they bring this suit in their names for the following good and sufficient reasons in addition to the matters hereinbefore alleged." But we need enumerate but two of them, viz.: In substance, because "the *de facto* managers and directors of said Gulf City Street Railway and Real Estate Company are unwilling and refuse to bring the suit, though often requested so to do, and have stock in the Galveston City Railway Company and are interested therein and adversely to the Gulf City Street Railway Company;" and "because said officers and managers of said Gulf City Street Railway and Real Estate Company have betrayed the trust reposed in them as such officers and managers," etc. It seems to be conceded that the suit is now by the amended petition maintained for the use and benefit of the company.

The foregoing is but a very limited statement of the allegations of the petition relied on in this case, all of which allegations are of course admitted to be *true* by the demurrers, and if we shall find upon full investigation, which we have given to the case, that this petition presents no ground of complaint and for relief that can be recognized in our courts in the manner in which the relief is sought, then we shall be very much

surprised that such a state of the law is allowed to exist, aside however from the question of limitation. That question we shall now dispose of in the first place. The suit was brought and even the first amended petition was filed several months before the expiration of two years from the occurrence of the acts and wrongs complained of. It was brought and has been always maintained against, as we have said, the same parties, to-wit, the Gulf City Street Railway and Real Estate Company, its officers and directors, and the other shareholders than plaintiffs, the Galveston City Street Railway Company, and the city of Galveston, which had under the franchise an interest in the earnings of the Gulf City Street Railway Company. There is a great similarity, as will be seen upon comparison, between the prayers of the first and second amended original petitions—in fact they are substantially, as to the relief sought as well as in their contents, identical except that in the first the plaintiffs appear to have asked a recovery in their own behalf as stockholders, and not directly for the company as in the latter petition, but they also pray in the first petition "for such other and further and *different* relief both in law and equity to which plaintiffs may be entitled and for full and general relief," etc.

Now all of the parties being before the court in the first instance as in the last, and all of the facts and grounds of action being fully stated for the information of the court in both petitions, does the fact that by the second amended petition the plaintiffs seek to recover for the use of the company under their own names and as share owners, whereas in the first they asked the judgment in their own right as shareholders, but not adversely to the company, amount to a change of the cause of action so that the statute of limitations began and continued in operation against their right to sue and ask relief for the benefit of the company, until the filing of their second amended petition? We think not under the circumstances of the case and the attitude in which we find the pleadings.

Before proceeding further we consider it proper to hold that the statute of limitations of two years could not have applied to the following property and property rights of the company (still in existence) alleged to have been unlawfully used and appropriated by the defendants, etc., and which were sought to be protected in both petitions, viz.: The real estate of the company described in the petition, reasonably worth $15,000; also roadbed, ties, and rails, $40,000; also rights and franchises and right of way, $100,000; total, $155,000.

Nor do we see how the plaintiffs' right as stockholders to have a receiver appointed for the corporation could have been barred upon the expiration of only two years from the consolidation, etc., if they were entitled to the appointment otherwise. The District Court of Galveston County held that they *were* under the allegations of the petition, and we see no good reason to differ from that conclusion if the matters

alleged and having reference thereto are proved. The plaintiffs by the amendment certainly did not abandon this part of the relief sought, but on the contrary more fully renewed and continued the prayer for the appointment. The same grounds for this relief, on the hypothesis that the suit can be maintained, have existed from the beginning of the proceedings, and still continue according to the averments. We may further remark that if upon final trial the plaintiffs show such a state of the case as would justify the appointment of a receiver this may then be very properly done, notwithstanding the District Court has already refused to make the appointment by an interlocutory order. That order, not being final, does not conclude the matter. See on this whole subject Sayles' Civ. Stats., arts. 1461, 1470g, 1470i; Mora. on Priv. Corp., secs. 399, 400.

It may also be noted that in cases of trusts and appropriation of trust property the statute of limitations will not begin to run until the repudiation of the trust is manifest, nor where the fraud of the trustees is concealed so that it can not be discovered by reasonable diligence. Turner v. Smith, 11 Texas, 620; Calhoun v. Burton, 64 Texas, 510, and authorities cited. There are allegations of concealment of the condition of the corporation by defendants from the plaintiffs and of the books, etc., so that they could not ascertain and give a perfect list of the property of the company appropriated by the defendants. It might also be doubted whether the plaintiffs' right of action fully accrued before the refusal of the officers to recognize the complaint of the plaintiffs for relief within the corporation made by them in 1888, and to which we have already adverted, and which occurred less than two years before the filing of the second amendment. There is a seeming inconsistency in sustaining both of the exceptions, since if, as held by the court below, the plaintiffs should yet apply for relief within the corporation, and not having done this sufficiently to give them a right of action, could they not be barred by limitation? But we do not rest the decision of this question on the above grounds. We do not believe that the filing of the second amended petition was a new suit or the abandonment of the original action. We have already shown that it was not as to the appointment of the receiver. In that respect the petition was of a somewhat dual character. The plaintiffs asked for the receiver in their own right as stockholders. and for a recovery for the benefit of the company. This latter ground was set up to obviate the objections made by the demurrers which were sustained in this particular to the first amended petition.

It is apparent to our minds that the first petition was filed and maintained by the plaintiffs in the interest of the company, and to place it, through the aid and instrumentality of the court, in *statu quo* if possible for the benefit of all those having any legal interest in the organization. They claimed nothing adversely to the company or to the rights

of the stockholders thereof within the association. Their avowed and manifest object was to restore the company to its original charter basis and to the enjoyment and use of its property and franchises in accordance with the charter. True, they asked a recovery for themselves as stock-holders without expressly stating, as they do in the second amended petition, that they were suing for the use and benefit of the company, but they distinctly recognize the rights of the company and alleged the ownership of all the property and franchises sued for to be in the company. The title of the corporation to the whole assets is not disputed, nor did they set up any right in themselves superior to or outside of that body, but claimed entirely in subordination thereto as it exists under its charter. The main complaint was against the officers and directors for not carrying out the purposes of their organization, but in abandoning those purposes entirely.

In perfect harmony with the view we have expressed, that the purpose of the first petition was in the interest of the whole company and not in hostility thereto (but it was in effect for its benefit that the relief was sought) is the prayer of that petition, some of which we now insert: "That your honor will appoint a receiver to take charge of *all the property* rights, franchises, and effects belonging to said Gulf City Street Railway and Real Estate Company, and that he have power * * * to sue and take the same into his possession, control, and management," etc. Again, after praying for the recovery of the property, etc., "and that the defendants be required to surrender the same to *the receiver* appointed by this court, together with all other property rights and franchises of said Gulf City Street Railway and Real Estate Company," etc. Though appointed on petition of the stockholders the receiver is nevertheless the receiver of the corporation, and must account to the court for the benefit of all the stockholders. He is not merely the representative of those securing his appointment, but represents the interest of the whole company in managing the concern under the direction of the court. Sayles' Civ. Stats., art. 1470g, *supra.* Under such circumstances we do not believe that there was any very material change in the character of the suit made by the second amended petition, or that the suit as originally instituted was thereby abandoned.

We are inclined to believe that had the plaintiffs proceeded to trial on the first petition and obtained judgment as prayed for it would have inured to the benefit of the company and not to their own exclusive right; or at least that the court, having all the parties and facts before it, and the *title* of the *company* in *everything* being admitted in the petition, could have rendered the proper decree for the protection of the interests of all as well as can be done perhaps under the second amendment, which only makes the point clearer and meets the demurrers. It was doubtless the better practice, if it was not necessary, to have filed this latter amendment, and thus removed all doubts in that par-

ticular. Evans v. Brandon, 53 Texas, 60. When the petition is simply bad on demurrer on account of stating the cause of action defectively, it will prevent the running of the statute of limitation nevertheless, and curing the defects therein by amendment does not ordinarily amount to a new suit or an abandonment of the original unless a new and distinct title is invoked by the amendment. Killebrew v. Stockdale, 51 Texas, 529; McIlhenny v. Lee, 43 Texas, 206. That latter distinction we think prevents this case from falling within the rule recognized by the authorities cited by appellees' counsel, viz., that when the plaintiff by the amendment changes the character in which he sued originally, that will amount to a new suit, and the statute runs, until the amendment, against the *new* TITLE. Hopkins v. White, 17 Texas, 30; Morales v. Fisk, 66 Texas, 189. The decision in Railway v. Culberson, 72 Texas, 375, clearly does not apply and control this question as here presented. In Hopkins v. White, *supra*, stress was laid by the court upon the facts that the plaintiff's "original claim was for the whole property (in her own right), and by a claim paramount, antecedent to, and subversive of any right or title in the estate, whereas the amendment is in effect a suit for partition of property of an estate held by her in common with others." Such is not the attitude of the plaintiffs in this suit as shown by the two petitions. We repeat that both petitions set up the same right and title to the property and in the company, not in the plaintiffs individually, or in their representative character, except in subordination to the company.

We think that all of these decisions above cited, and others of like import on that question, were based upon the fact that the amendment set up a new title, distinct or hostile to that first alleged, or such other facts as did not appear from the original pleading and which constitute a new and different cause of action. In this case the first petition gave notice of all the facts and of the title as fully as the second. Had the plaintiff in Morales v. Fisk, *supra*, in the original petition sued individually, yet alleged that the land belonged to his intestate and that he was the administrator of the estate, but prayed judgment in his individual right for such land, and then had a demurrer been interposed on this account, and met by him by an amendment so as to obtain the recovery in his representative character for the estate, as he should have asked in the first instance, we doubt very much if it would have been held that this was stating a new cause of action and that limitation continued to run until the amendment was filed. We do not think that the statute of limitations of two years is available against plaintiffs' second amended original petition.

We shall only discuss the other demurrer briefly. It certainly can not be successfully maintained that under the averments of the amended petition last mentioned, which we have hereinbefore attempted to outline, the plaintiffs can not prosecute this suit without making further

effort to obtain relief and a redress of the wrongs from and within the corporation itself, or from its officers and directors. The mere statement of the gross wrongs and acts, *ultra vires*, alleged and admitted to have been done, for the purposes of this appeal is an answer to the contention. With an extract from an accurate text writer and the citation of a few of the very many authorities, we will dismiss this question: "But a demand on the proper agents of a corporation and their refusal to act are material only because they show that the corporation itself is unable to protect the rights of its members; for a corporation has no means of acting except by its agents; and therefore if it be made to appear in any manner that a corporation can not safely be left to obtain relief through the action of its agents, equity will interfere at the suit of *a stockholder* without proof of a demand upon the managing agents and their wrongful refusal or neglect to proceed on behalf of the company. Thus if the agents of a corporation in whom the authority to direct its litigation is vested are themselves guilty of a wrong against the corporation, a court of equity will interfere at the suit of a stockholder to protect his interest in the corporation without requiring him first to request the *guilty agents* to proceed in the name of the corporation against themselves. For a demand would ordinarily be nugatory under these circumstances; and it would be wholly contrary to established principles of justice to permit the authors of a wrong to conduct a litigation against themselves as agents of the injured complainants." Mora. Priv. Corp., secs. 386, 196, 197, 209, 210, 239, 240, 243, 245, 251, 242, 51–54 *et seq.* Plaintiffs therefore appear to have already done more than they were required to do. To the same effect and fuller perhaps is the case of Cates v. Sparkman, 73 Texas, 620, and authorities cited.

We might also cite the brief of the learned counsel of appellees, filed in the case of Evans v. Brandon, *supra*, for a further elucidation of the subject.

We are clearly of the opinion that the court below erred in sustaining the two special exceptions before indicated. There may be some matters alleged in the petition, such as the refusal of the directory to accept the bid of Messrs. Adoue & Lobit for the bonds, that were discretionary with the directors entirely, and if so, should be abandoned (Cates v. Sparkman, *supra;* Mora. Priv. Corp., secs. 238, 241, 399), but we are not called upon to, and do not, decide any other questions than those arising from the action of the court in sustaining the aforesaid special exceptions. For that action of the court we think the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted March 27, 1891.


Motion for rehearing transferred to Austin, and there refused.