Charles E. PACE and Maria
T. Fuentez, Appellants,

v.

Don D. JORDAN; Don D. Sykora; Milton Carroll; John T. Cater; Floyd L. Culler, Jr.; Joseph M. Hendrie; Howard W. Horne; Thomas B. McDade; Randall Meyer; Alexander F. Schilt; Kenneth L. Schnitzer; Jack T. Trotter; Houston Industries, Inc.; Houston Lighting and Power Company, Appellees.

and

Houston Industries, Inc., Appellant,

v.

Charles E. Pace and Maria
T. Fuentez, Appellees.

No. 01–98–00682–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 26, 1999.

**618**

Newton Schwartz, Houston, Stephen A. Whinston, Philadelphia, PA, Benton Musslewhite, Houston, Geoffrey M. Gay, Austin, for Appellant.

Stephen G. Tipps, Rebecca L. Robertson, Houston, for Appellee.

Panel consists of Chief Justice SCHNEIDER and Justices HEDGES and ANDELL.

## OPINION ON MOTION FOR REHEARING

ADELE HEDGES, Justice.

The Court today considered the motion by appellants, Charles E. Pace and Maria T. Fuentez, which was entitled, "Motion for Reconsideration and Reconsideration En Banc." We construe this motion to be a motion for rehearing under TEX.R.APP. P. 49.5, and for en banc reconsideration under TEX.R.APP. P. 49.7. The motion for rehearing is granted. We withdraw our opinion dated July 1, 1999, and issue this opinion in its stead. Our judgment of July 1, 1999 remains unchanged.[1]

### Background

This case involves shareholder derivative litigation. Appellants, Pace and Fuentez, are shareholders of Houston Industries, Inc. ("HII") and former employees of Houston Lighting & Power ("HL & P"), a wholly owned subsidiary of HII. In April 1992, appellants lost their jobs because of a company-wide reduction in force.

On October 5, 1992, Pace, as a shareholder, sent a "demand letter" to HII, demanding that the board of directors terminate the corporate officers and commence legal action to recover damages suffered by HII. Pace claimed that the corporate officers, including appellees Don D. Jordan and Don D. Sykora, were liable for breaches of fiduciary duty because of bad investment strategies, legal malpractice, and misappropriated lumber.

After considering Pace's allegations and management's responses, the HII directors referred the charges to the board's audit committee for investigation. The audit committee, with the assistance of HII's internal auditing department, the Deloitte & Touche accounting firm, and outside counsel, investigated the charges and found they were unsupported by the facts. The audit committee reported its findings, and the board concluded that Pace's claims did not warrant further action. In November 1992, the board notified Pace that it had considered and refused his demands.

Pace sent a second demand letter to the board in March 1993. He reasserted his initial charges and raised new claims, but did not make claims against the remaining directors. The board again referred the charges to the audit committee, which again sought the assistance of Deloitte & Touche and outside counsel for investigation. After reviewing the charges, management's responses, and the outside consultants' reports, the audit committee again recommended against further action. After the board adopted the finding, it notified Pace that his claims were without merit and that litigation would not serve HII's interest.

Pace sent a third demand letter to the board on July 21, 1993. This letter contained the allegations from the first two letters, including the request to sue appellees Jordan and Sykora, and the letter added allegations about the South Texas Nuclear Project (STP). Specifically, Pace

---

1. Therefore, the motion for reconsideration en banc is moot.

claimed that the officers' mismanagement led to the facility's shutdown in February 1993 and increasing regulatory activity. Again, Pace charged only Jordan and Sykora, not the remaining directors.

After the STP shutdown, the board studied the causes and the regulators' concerns about the facility's operation. In the months before the vote on Pace's third demand, the board met with regulators to discuss the STP issues. In September 1993, the board considered Pace's STP claims. The disinterested directors, based on their familiarity of the events and their discussions with federal regulators, voted to refuse Pace's demand. The board notified Pace of its decision.

In response, Pace and Fuentez filed a shareholder's derivative suit, purportedly on HII's behalf. They sued not only appellees Jordan and Sykora, but also the remaining directors. HII and the individual defendants (collectively referred to as "the HII parties") counterclaimed for attorneys' fees.

The HII parties moved for summary judgment, contending that the suit, which belonged to the corporation, was barred because the directors had previously decided that the suit was not in HII's best interest. The trial court rendered an interlocutory summary judgment in favor of the HII parties.[2] Pace and Fuentez prematurely appealed to this Court, and later withdrew their appeal because the interlocutory summary judgment was not a final judgment. On June 1, 1998, the trial court rendered final judgment. Pace and Fuentez and the HII parties have filed separate appeals.

## Standard of Review

Summary judgment is proper only when a movant establishes that there is no genuine issue of material fact and that it is

entitled to judgment as a matter of law. *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995). In reviewing the summary judgment, we indulge every reasonable inference in favor of the nonmovant, resolve any doubts in its favor, and take as true all evidence favorable to it. *Id.; Bangert v. Baylor College of Med.,* 881 S.W.2d 564, 565–66 (Tex.App.—Houston [1st Dist.] 1994, writ denied). A defendant is entitled to summary judgment if the evidence disproves as a matter of law at least one element of each of the plaintiff's causes of action or if it conclusively establishes all elements of an affirmative defense as a matter of law. *Johnson,* 891 S.W.2d at 644.

## Which Law Applies?

In their first point of error, Pace and Fuentez contend that the 1997 amendments to the applicable statute should be retroactively applied to this case.

Texas law militates strongly against the retroactive application of laws. TEX. CONST. art. I, § 16. In Texas, a statute is "presumed to be prospective in its operation unless expressly made retrospective." TEX. GOV'T CODE ANN. § 311.022 (Vernon 1988). Amendments are also presumed not to apply retroactively. *Houston Indep. Sch. Dist. v. Houston Chronicle Publ'g Co.,* 798 S.W.2d 580, 585 (Tex.App.—Houston [1st Dist.] 1990, writ denied). Doubts as to retroactivity are resolved against the retroactive application of a statute. *Ex parte Abell,* 613 S.W.2d 255, 258 (Tex.1981).

Both sides agree that Texas Business Corporation Act article 5.14 governs. The article was amended effective September 1, 1997. The HII parties' interlocutory summary judgment was signed about 7 months earlier on January 28, 1997.[3] Pace

---

2. At the time the summary judgment was heard, Pace and Fuentez had dropped all claims except those concerning STP mismanagement.

3. The summary judgment was interlocutory because it did not dispose of HII's counterclaim for attorneys' fees. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014 (Vernon Supp.1999). After the trial court rendered the interlocu-

and Fuentez urge this Court to retroactively apply the 1997 amendments to the interlocutory summary judgment. They argue that the amendments to article 5.14 were procedural changes, and, therefore, should apply retroactively because the case was still pending below. *Holder v. Wood,* 714 S.W.2d 318, 319 (Tex.1986) (holding that changes in statutes affecting remedies or procedure may be applied retroactively). On the other hand, the HII parties argue that, regardless of whether the amendments were substantive or procedural, the trial court correctly rendered judgment under the old rules, and this Court should not reverse the judgment by applying new rules which did not exist at the time of the interlocutory summary judgment.

This case is not about retroactivity, however. The following chronology of events is helpful to understand the issues. On January 28, 1997, the trial court rendered the interlocutory summary judgment. Pace and Fuentez prematurely appealed to this Court, and later withdrew their appeal since the interlocutory summary judgment was not a final judgment. About seven months after the interlocutory summary judgment was rendered, article 5.14 was amended effective September 1, 1997. Nine months later, on June 1, 1998, the trial court rendered its final judgment.

Even though the 1997 amendments did not exist when the interlocutory summary judgment was rendered, the amendments were in effect when the final judgment was rendered. Pace and Fuentez concede that neither party brought the amendments to the trial court's attention. Without a trial objection, Pace and Fuentez waived their right to raise this complaint on appeal. TEX.R.APP. P. 33.1(a). Thus, they did not preserve error. *Id.*

For example, in *Jones v. Jones,* 888 S.W.2d 858, 859–60 (Tex.App.—Houston [1st Dist.] 1994, writ denied), the plaintiff requested this Court to retroactively apply a change in the law from a new Texas Supreme Court case. However, authority for the plaintiff's position had existed at the time the motion for summary judgment was filed. *Id.* at 859–60. We held that the plaintiff could have made the argument "to the trial court, and then, having done so, to this Court in her original briefing." *Id.* We therefore held that the plaintiff did not preserve error. *Id.* at 860; *see also Whole Foods Mkt. S.W., L.P. v. Tijerina,* 979 S.W.2d 768, 772 (Tex. App.—Houston [14th Dist.] 1998, pet. denied).

■ We are cognizant of the rule that "[w]hen the applicable law changes during the pendency of the appeal, the court of appeals must render its decision in light of the change in the law." *Blair v. Fletcher,* 849 S.W.2d 344, 345 (Tex.1993). The *Blair* case, which refers to common law, does not apply here. The 1997 amendments did not change the law during the pendency of this appeal, however. Instead, the amendments changed the law while the case was still pending in the trial court. The trial court did not render a final judgment until nine months after the amendments became effective. Because the trial court had jurisdiction to reconsider its ruling on the interlocutory summary judgment during those nine months, Pace and Fuentez should have made the argument to the trial court. Because they did not do so, they did not preserve error. Accordingly, we will not apply the 1997 amendments.

We overrule point of error one.

### Analysis Under the Pre–1997 Law

■ In their third point of error, Pace and Fuentez contend that under the pre-1997 law, this is a "demand futile" case, not a "demand refused" case, because: (a) Pace's letters were not demands; (b) Fuentez was not bound by Pace's de-

---

tory summary judgment in favor of the HII parties on January 28, 1997, both sides moved for summary judgment on the HII parties' counterclaim for attorneys' fees. The trial court rendered a final judgment on June 1, 1998.

mands; (c) the trial court restricted discovery; (d) the board was not independent and disinterested; and (e) the board's investigation was inadequate.

## Pace's Letters Are Considered a Demand

█ Pace contends that this is a demand futile case because his letters were inadequate to be considered a demand. Under the prior version of article 5.14, a shareholder had to either make a demand on the board of directors or show that such a demand would have been futile. Act of May 25, 1973, 73d Leg., R.S., ch. 545, § 37, art. 5.14(B)(2)(b), 1973 Tex. Gen. Laws 1486, 1508 (since amended 1997); (current version at TEX. BUS. CORP. ACT ANN. art. 5.14(D) (Vernon Supp.1999)). Under the amended article, demand futility is no longer an option. TEX. BUS. CORP. ACT ANN. art. 5.14(d) (Vernon Supp.1999). A demand must (1) identify the alleged wrongdoer, (2) describe the factual basis of the claim, (3) describe the corporation's injury, and (4) request remedial action. See Allright Mo., Inc. v. Billeter, 829 F.2d 631, 638 (8th Cir.1987). Pace contends that his letters did not meet the second element. We disagree.

█ A demand is sufficient if the board of directors had a fair opportunity to consider the shareholder's claims. See Lewis v. Sporck, 646 F.Supp. 574, 577–78 (N.D.Cal.1986). Pace argues that his March 1993 letter was deficient because it neither specifically named the "whistleblowers" who were fired at STP nor identified "the subject matter of their complaints beyond a reference to 'security problems and other problems' at STP." He also contends that his July 1993 letter was deficient because it "refers summarily to maintenance problems, management incompetence, failure to comply with NRC 'requisites,' and intimidation of employees raising complaints at STP."

█ The allegations by Pace and Fuentez in their fourth amended petition track the allegations in Pace's letters. The fact that the petition is more detailed does not render the letters inadequate. Further, the remedy for an inadequate demand is dismissal. See Renfro v. FDIC, 773 F.2d 657 (5th Cir.1985). Pace provides no authority for his propositions that an inadequate demand is not a demand; therefore, this is a demand futile case. We find these arguments without merit.

## Fuentez Is Bound by Pace's Demand

█ Fuentez contends that the trial court erred in dismissing her cause of action because she never made a demand, as required by article 5.14.

█ To bring a derivative suit, a shareholder must show that he or she "fairly and adequately represents the interests of the shareholders similarly situated in enforcing the right of the corporation." TEX.R. CIV. P. 42(a). Fuentez brought claims identical to Pace's claims. Either Pace or Fuentez had to prove that he or she fairly and adequately represented the remaining shareholders. We discern no logical reason why a board's decision should not bind similarly situated shareholders making identical claims. Judicial economy demands that identical claims, which in actuality belong to the corporation, be simultaneously disposed of by one demand.

Fuentez cites three cases from other jurisdictions for the proposition that a demand made by one shareholder is not binding on another. Levine v. Smith, 591 A.2d 194 (Del.1991) (discussing claims of demand refused shareholder and demand futile shareholder without deciding whether one precludes the other); Avacus Partners, L.P. v. Brian, 1990 WL 161909, 1990 Del. Ch. LEXIS 178 (Del. Ch.1990) (holding that board's response to one shareholder was insufficient to compel dismissal of another shareholder's claim at that point in litigation ); Miller v. Loucks, 1992 WL 329313, 1992 U.S. Dist. LEXIS 16966 (N.D.Ill.1992) (relying on holding in Avacus without detailed analysis). These au-

thorities are not controlling on Texas courts of appeals. Moreover, we do not find them persuasive and decline to follow them to the extent they conflict with our holding that Fuentez was bound by the board's refusal of Pace's demand.

**Opportunity for Discovery**

 Pace and Fuentez contend that the trial court restricted their discovery. Specifically, they complain that the only witness the HII parties presented for deposition, Mr. Milton Carroll, was not adequately informed about the board's decisions. Three additional depositions were therefore necessary.[4]

Pace and Fuentez issued deposition notices for the three additional witnesses, and the HII parties moved for a protective order to quash the depositions. In response, Pace and Fuentez did not file a "motion to compel." Instead, they filed a "Response to [HII's] Motion for Protective Order Prohibiting the Taking of Oral Depositions." Their "response" appears to be similar in substance to a motion to compel.

Pace and Fuentez admit that the motion for protective order and the response were not ruled on. Instead, Pace and Fuentez argue that the trial court, by not ruling on the pending motions, "in effect prevented" the depositions. We disagree.

Pace and Fuentez should have filed a motion to compel instead of a "response" to the HII parties' motion for protective order. *See* TEX.R. CIV. P. 215.1. Then, they should have either obtained a ruling on the motion to compel, or objected if the trial court refused to rule. *See* TEX.R.APP. P. 33.1(a)(2). Pace and Fuentez did neither. There is nothing in the record to suggest that Pace and Fuentez set their "response" for a hearing, obtained a ruling, or object-

ed. According to the docket entry dated November 11, 1996, the HII parties passed their motion for protective order. The trial court apparently did not rule on that motion either.

A few days later, on November 14, 1996, the trial court signed an agreed order, which stated that the court would receive further submissions until the summary judgment motion was "before the Court by submission as of November 25, 1996." Even if the summary judgment hearing had been held as scheduled on October 28, 1996, Pace and Fuentez could have filed further submissions for another month, until November 25, 1996. In fact, the trial court waited another 2 months after that until it rendered the interlocutory summary judgment on January 28, 1997—four months after Pace and Fuentez served notice for the additional depositions. The trial court then waited until the following year to render final judgment in 1998.

There is nothing in the record to demonstrate that the trial court prevented the discovery sought by appellants. Moreover, on the record before us, appellants have not shown they were harmed. *See* TEX.R.APP. P. 33.1.

**Independent and Disinterested Board**

 Pace and Fuentez contend that this is a demand futile case because fact issues exist as to whether the board was independent and disinterested.

 A corporation's directors, not its shareholders, have the right to control litigation of corporate causes of action. TEX. BUS. CORP. ACT ANN. arts. 2.02(A)(2), 2.31 (Vernon Supp.1999). A shareholder's derivative cause of action is based on a corporate cause of action. *Hajdik v. Wingate*, 753 S.W.2d 199, 201 (Tex.App.—Houston [1st Dist.] 1988), *aff'd*, 795 S.W.2d

---

4. In their motion for continuance and their counsel's affidavit, Pace and Fuentez complained about the HII parties' lack of document production. Other than a brief reference to the affidavit, Pace and Fuentez do not state on appeal how the evidence was material and necessary. Nor do they otherwise sup-

port their contention with facts, authorities, or arguments. Thus, they present nothing for our review on the issue of production. *See* TEX.R.APP. P. 38.1(h); *Fredonia State Bank v. General Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex.1994).

717 (Tex.1990). Thus, the corporation, through its board of directors, determines whether the chances for a successful suit, the costs of maintaining a suit, and other factors militate in favor of instituting such an action. *Cates v. Sparkman,* 73 Tex. 619, 11 S.W. 846, 848 (1889); *Zauber v. Murray Sav. Ass'n,* 591 S.W.2d 932, 936 (Tex.Civ.App.—Dallas 1979), *writ ref'd n.r.e.,* 601 S.W.2d 940 (Tex.1980).

▮ To bring a derivative suit in the right of a corporation, a shareholder must show that the board of directors' refusal to act was governed by something beyond unsound business judgment. *Langston v. Eagle Publ'g Co.,* 719 S.W.2d 612, 616 (Tex.App.—Waco 1986, writ ref'd n.r.e.); *Zauber,* 591 S.W.2d at 936. Under the business judgment rule, a shareholder cannot institute a derivative suit on the corporation's behalf by merely showing that the board's refusal to act was unwise, inexpedient, negligent, or imprudent. *Cates,* 11 S.W. at 849; *Langston,* 719 S.W.2d at 616–17.

▮ Pace made a demand on the board of directors through his three letters. He invoked article 5.14 of the Texas Business Corporation Act, set forth his complaints, named the officers and directors that allegedly had harmed HII and HL & P, requested that those individuals be fired, and requested that the board sue the officers for mismanagement. The board discussed Pace's claims, and the outside directors decided that litigation was not in HII's best interest. To show that the decision was governed by something other than sound business judgment, appellants had to prove that the board's refusal to act was characterized by an ultra vires, fraudulent, and injurious practice, an abuse of power, and an oppression on the part of the company or its controlling agency clearly subversive of the rights of the minority, or of a shareholder, and which, without such interference, would leave the latter remediless. *Cates,* 11 S.W. at 849; *Langston,* 719 S.W.2d at 617.

▮ Directors are "interested" if they have such a personal interest in the controversy or are so controlled by the alleged wrongdoers that they could not reasonably be expected to diligently pursue the action. *Zauber,* 591 S.W.2d at 937. Pace and Fuentez cite a litany of cases in which courts have found that the directors were interested, and therefore, could not act on behalf of the corporation because they were either potential litigants or controlled by potential litigants. All of these cases, however, address allegations of self-dealing or fraud by a majority of the directors.[5] Appellant produced no evidence to show that the HII directors committed fraud or engaged in self-dealing. Thus, under the traditional notions of self-interest, Pace and Fuentez did not raise a fact issue that the refusal of the demand was improper.

▮ Pace and Fuentez further argue that the directors could not be disinterested because they might have had to sue themselves.[6] Therefore, they contend that a demand would have been futile.

---

5. *Cates,* 11 S.W. at 849 (alleging self-dealing and fraud); *Becker v. Directors of Gulf City St. Ry. & Real Estate Co.,* 80 Tex. 475, 15 S.W. 1094, 1094–95 (1891) (alleging misappropriation of corporate funds by president and directors for their personal benefit, and fraudulent transfer of stock and corporate property); *Barthold v. Thomas,* 210 S.W. 506, 508 (Tex. Comm.App.1919, holding approved) (alleging fraud);*Muller v. Leyendecker,* 697 S.W.2d 668, 675 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.) (alleging directors had personal, financial interest in lease being litigated); *Hughes v. Houston N.W. Med. Ctr.,* 647 S.W.2d 5, 7 (Tex.App.—Houston [1st Dist.] 1982, writ dism'd w.o.j.) (alleging fraud and self-dealing); *Zauber,* 591 S.W.2d at 934 (alleging self-dealing); *Governing Board v. Pannill,* 561 S.W.2d 517, 524–25 (Tex.Civ.App.—Texarkana 1977, writ ref'd n.r.e.) (alleging fraud and ultra vires acts); *In re Jackson,* 141 B.R. 909 (Bankr.N.D.Tex.1992) (alleging self-dealing by transfer of corporate assets to business owned by directors and officers).

6. Pace's demand letters complained about only appellees Jordan and Sykora. No allegations were raised against the remaining directors. Pace and Fuentez did not name the remaining directors until they filed suit.

■ Several jurisdictions have held that merely naming disinterested directors as defendants does not avoid the duty to make a demand. *See e.g., Lewis v. Graves,* 701 F.2d 245, 248 (2d Cir.1983); *Heit v. Baird,* 567 F.2d 1157, 1162 (1st Cir.1977); *Cottle v. Hilton Hotels Corp.,* 635 F.Supp. 1094, 1098–99 (N.D.Ill.1986).[7] The mere fact that directors participated in and authorized the disputed transactions underlying the derivative suit is not enough by itself to excuse a demand. *See Graves,* 701 F.2d at 248. We agree with this reasoning. The mere fact that Pace and Fuentez made claims against all of the directors does not create a genuine issue of material fact as to the disinterestedness and independence of the board.

**Adequate Investigation**

■ As set forth above, Pace and Fuentez had to prove that the board's refusal was motivated by something beyond unsound business judgment. Yet Pace and Fuentez merely contend that the board's investigation before the vote on Pace's demands was inadequate because the board was not fully informed about all of the allegations surrounding STP, Jordan, and Sykora.

■ A board may invoke the business judgment rule's protection only if the directors are informed before making a decision, "of all material information reasonably available to them." *Aronson,* 473 A.2d at 812. In assessing whether the board was informed, pertinent matters include the information considered, the use of experts or consultants, the notice given to the board, and its independence. *Grobow v. Perot,* 539 A.2d 180, 191 (Del.1988).

Director Milton Carroll stated that he and other voting directors had at times served on the personnel committee and were familiar with the management abilities of corporate officers, including appellees Jordan and Sykora. The board had obtained outside assessments of Pace's earlier claims, heard management's responses, and was unable to substantiate the claims. Throughout the ongoing assessment of STP, the directors had received regular reports from the Vice President, Nuclear, and from the board's own Nuclear Committee. Before considering Pace's claims, the directors knew of the management initiatives that had been and were being implemented to address the problems at STP. The directors had met with regulatory authorities only weeks before voting on Pace's demands and were satisfied that the regulators' concerns were being addressed. Based on this information, it was the directors' judgment that Pace's claims did not justify litigation. There was no genuine issue of material fact regarding whether appellees Jordan and Sykora carried out the corporate objectives set by the board, or whether they wavered in their loyalty to HII, HL & P, or the shareholders.

In their response to the interlocutory summary judgment motion, Pace and Fuentez acknowledge that the board, before its meeting to discuss Pace's demands, had reviewed the executive summary of the diagnostic evaluation team report. This summary outlined the regulatory authority's assessment of the causes of the outage at STP. Appellants point to no authority to support that information is insufficient to support a board's decision merely because the information is obtained

**7.** In *Lewis v. Curtis,* 671 F.2d 779, 785 (3d Cir.1982), the court held that "to allow one shareholder to incapacitate an entire board of directors merely by leveling charges against them gives too much leverage to dissident shareholders." Similarly, in *Aronson v. Lewis,* 473 A.2d 805, 815 (Del.1984), the court held that the "mere threat of personal liability for approving a questioned transaction, standing alone, is insufficient to challenge either the independence or disinterestedness of directors." We agree with the reasoning in both *Curtis* and *Aronson,* although we recognize that the United States Supreme Court rejected the uniform, federal common-law approach to the demand doctrine in these types of cases. *See Kamen v. Kemper Fin. Servs., Inc.,* 500 U.S. 90, 104, 111 S.Ct. 1711, 1720, 114 L.Ed.2d 152 (1991).

before a demand is received. Carroll's affidavit succinctly sets forth the information known by the board about the problems at STP before it voted on Pace's demands.

Moreover, the regulatory agency's findings and the fines imposed against HII are not pertinent to the sufficiency of the board's investigation. A derivative suit on the corporation's behalf cannot be maintained by merely showing that the board's decision not to act was unwise, inexpedient, negligent, or imprudent. *Cates,* 11 S.W. at 849; *Langston,* 719 S.W.2d at 616–17. Appellants raise no genuine issue of material fact as to the alleged inadequacy of the board's investigation.

We overrule the third point of error.

### Inapplicability of 1997 Amendments

The underlying thesis of appellants' second point of error is that the 1997 amendments to article 5.14 control. They contend that under the amended law, the trial court erred because: (a) the board's procedures were improper; (b) the board was not independent and disinterested when it rejected Pace's claims; and (c) Pace and Fuentez were not given an appropriate opportunity for discovery.

We have already decided that pre–1997 law applies to this case. The 1997 amendments do not apply because appellants did not preserve error. TEX.R.APP. P. 33.1(a). We therefore need not address the second point of error.

■ Nonetheless, if this contention were before us, we would still hold that pre–1997 law applies to this case, particularly with regard to the board's procedures. Pace and Fuentez argue that the board's procedures were improper under amended article 5.14(H) because Jordan and Sykora may have been present at the time of the vote during the meeting on September 1, 1993.

The 1997 amendments added section H, which states that the decision to refuse a demand must be made by "a majority vote of independent and disinterested directors present at a meeting of the board of directors at which interested directors are not present (at the time of the vote) if the independent and disinterested directors constitute a quorum of the board of directors." TEX. BUS. CORP. ACT ANN. art. 5.14(H)(1) (Vernon Supp.1999).

The law that controls who can attend the board of directors meeting is the law in effect on the date of the relevant event—the September 1, 1993 meeting—which was long before the 1997 amendments. How else could officers and directors conform their conduct to statutory requirements except by following the law existing at the time of the conduct? Under the pre–1997 law, it is irrelevant whether Jordan and Sykora were present during the vote.

We overrule the second point of error.

### The HII Parties' Counterclaim for Attorneys' Fees

■ In a sole point of error, the HII parties appeal the trial court's refusal to award attorneys' fees on their counterclaim.

After the trial court rendered the interlocutory summary judgment, both sides moved for summary judgment on the HII parties' counterclaim for attorneys' fees. The counterclaim was based on article 5.14(F), which provides that the trial court "may" order the plaintiffs to pay expenses "if it finds that the proceeding was commenced or maintained without reasonable cause or for an improper purpose." Act of May 25, 1973, 73d Leg., R.S., ch. 545, § 37, art. 5.14(F), 1973 Tex. Gen. Laws 1486, 1509 (since amended 1997); (current version at TEX. BUS. CORP. ACT ANN. art. 5.14(J)(1)(b) (Vernon Supp.1999)).

■ The Texas Supreme Court recently analyzed a provision similar to the one in this case. *Bocquet v. Herring,* 972 S.W.2d 19, 20 (Tex.1998). The statute in *Bocquet* provided that the court "may"

award attorneys' fees. *Id.* (analyzing language of Uniform Declaratory Judgments Act). Based on this permissive language, the trial court had discretion in awarding attorneys' fees. *Id.* The Texas Supreme Court further held that the "same is true of other statutes that provide that a court 'may' award attorney fees." *Id.*[8] Thus, based on article 5.14's permissive language, the trial court is not required to award attorneys' fees. Rather, the award is discretionary. *See Houston Indep. Sch. Dist. v. Houston Chronicle Publ'g Co.*, 798 S.W.2d 580, 590 (Tex.App.—Houston [1st Dist.] 1990, writ denied) (analyzing language of Uniform Declaratory Judgments Act).

An abuse of discretion implies more than an error in judgment. It must be an arbitrary and unreasonable action by the trial court. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). The test is whether the court acted without reference to any guiding rules and principles. *Id.*

In this case, the order signed by the trial court on June 1, 1998, is open to conflicting interpretations. The HII parties contend that the order represented a finding that Pace and Fuentez brought the suit without reasonable cause. In light of that finding, the HII parties argue, the court abused its discretion in denying expenses. Pace and Fuentez, on the other hand, contend that the order was an attempt by the trial court to issue an order finalizing the interlocutory summary judgment and the HII parties' request for attorneys' fees. The precise interpretation does not matter. The trial court had the discretion to deny expenses, even if it found that this suit was not brought for reasonable cause. *See Bocquet*, 972 S.W.2d at 20.

The HII parties rely on various claims and litigation instituted by Pace or Fuentez dealing with various matters since they had been dismissed from HL & P. While this evidence might establish a pattern of unreasonable claims, it does not necessarily show that this suit was not brought for reasonable cause.

The HII parties showed that Pace's demands were based on speculation, rumors, and newspaper reports. Claims were also based on what Pace and Fuentez learned from regulatory documents. The fact that the information came from third parties did not necessarily establish that the case was brought without reasonable cause.

The trial court was privy to all the arguments made by all the parties in consideration of the interlocutory summary judgment. Based on this record, and on the trial court's obvious familiarity with this suit, we cannot say that the trial court abused its discretion in denying expenses.

We overrule the HII parties' sole issue.

### Conclusion

We grant the motion for rehearing by Pace and Fuentez. We affirm the judgment of the trial court.

---

**8.** In contrast, statutes providing that a party "may recover," "shall be awarded," or "is entitled to" attorneys' fees are not discretionary. *Id.*