Affirmed and Opinion filed November 7, 2002









Affirmed and Opinion filed November 7, 2002.

 




 
 
 
  
 
 
 




In The

 

Fourteenth Court of Appeals

____________

 

NO.
14-01-00532-CV

____________

 

EDWARD BASS AND CARY L. BASS,
Appellants

 

V.

 

T. DELBERT WALKER, WALKER SAND, INC., ELLINGTON DIRT, INC.,
CAMILLE BUTLER, AND ED ROBEAU, Appellees

 



 

On
Appeal from the 269th District Court

Harris County, Texas

Trial
Court Cause No. 91-08515

 



 

O
P I N I O N

Appellants
Edward Bass and Cary L. Bass challenge the sufficiency of the evidence
supporting the trial court=s determination that they brought this derivative suit without
reasonable cause.  Because there was
sufficient evidence that appellants filed suit without reasonable cause and
because the trial court did not abuse its discretion in ordering them to pay appellees= expenses under the Texas Business Corporation Act, we affirm
the trial court=s judgment.








                              Factual and Procedural Background

In 1982,
T. Delbert Walker, Ed Robeau, Travis Campbell, Dr. E.
C. Butler, Dr. G. H.  Barfield[1],
and a group that included several members of the Bass family formed Ellington
Dirt, Inc., for the purpose of acquiring two adjacent tracts of land in
southeast Harris County (Athe Property@).  In that same year, Ellington Dirt purchased
the Property and leased it to Walker Sand, Inc., under a 1982 lease entitled ALease for
the Purpose of Removal and Sale of Sand and Related Fill Material@ (Athe
Original Lease@).  At all material times, Delbert Walker has been
the principal stockholder of Walker Sand and the president of both Walker Sand
and Ellington Dirt.  

The Original Lease contained the
following terms:

!         The term of the lease was 15 years.

!         During
the first four years of the lease, Walker Sand would pay Ellington Dirt $0.50
per cubic yard for all sand, fill dirt, and topsoil removed from the Property.

!         In the fifth year, this
royalty amount would increase to $0.60 per cubic
yard, and it would increase by five percent for each year
thereafter.  

!         If
Walker Sand failed to pay the royalties as specified in the lease, Ellington
Dirt had the right to immediately terminate the lease, re-lease the Property,
and, if it desired, bring suit against Walker Sand. 

!         If
Walker Sand did not work the lease or move sand, fill dirt, or topsoil for a
period of nine months, Ellington Dirt had the option to terminate the lease. 

!         Walker
Sand agreed to excavate all material on 52 acres of the Property to a depth of
35 feet.  

!         After Walker Sand completed this
excavation, Ellington Dirt would have the option to sell these 52 acres to
Walker Sand at fair market value or receive one-tenth of all revenues generated
from the operation of a landfill on these 52 acres.








!         In connection with the landfill option,
Walker Sand agreed to obtain any necessary permits and to comply with the laws
applicable to the operation of landfills. 

 

Approximately
two years after the Original Lease was signed, a number of problems arose that
impacted the operations.  First, the
economy suffered a downturn.  Because of
the adverse economic conditions and other factors, the Original Lease was not
generating much income.  In 1986,
Ellington Dirt agreed not to escalate the royalties as provided in the
lease.  Delbert Walker testified that he
told the shareholders of Ellington Dirt that circumstances made it unlikely
that a landfill permit could be acquired for the Property.  

In
1989, the Basses[2]
began to suspect that the Property was being used as a dump site. Edward Bass
and Travis Campbell found concrete, rebar, pipe, tires, and other materials on
the Property.  At a shareholders=
meeting in October of 1990, Edward Bass asked Walker about the apparent dumping
on the Property.  According to Bass,
Walker initially denied it, but later stated that seven to ten acres of the
Property had been used for dumping and that permits were unnecessary because he
dumped only Adirt and crushed concrete.@  The Basses feared that
the material dumped on the Property might be debris from a 1989 explosion at a
Phillips Petroleum Plant and, therefore, might contain hazardous waste.  Walker testified that he invited the Basses
to inspect and test the Property, but instead, Edward Bass resigned from
Ellington Dirt=s board of directors, and thereafter the Basses filed this
lawsuit.  The dumping on the Property
apparently ceased before the suit was filed based on a resolution passed by the
Ellington Dirt shareholders in December of 1990.  








In February of 1991, Travis
Campbell and the Basses filed this shareholder derivative suit on behalf of
Ellington Dirt against Delbert Walker and Walker Sand.  At all material times, the Basses have been
minority shareholders in Ellington Dirt. 
The original petition alleges derivative-action claims on behalf of
Ellington Dirt against Walker and Walker Sand for Abreaches
of fiduciary duty, bad faith, and fraudulent business transactions.@  In their petition, the Basses alleged that
the defendants Amade use of the land, for
Defendants= financial
gain, without compensating the rightful owner of the land therefor@ and that A[a]dditionally, such uses of the land have greatly impaired
its market value and subjected the owners of the land to increased liability.@  They also asserted claims for negligence and
fraud and requested exemplary damages in the amount of $500,000.  The Basses made no mention of the Original
Lease in their petition, nor did they assert any claim for breach of the
Original Lease in their original pleading.








Several months after the Basses
filed suit, the parties to the Original Lease amended it to provide, among
other things, that the royalty payment would remain at $0.50 per cubic yard
with no escalations (Athe Amended Lease@).  The Amended Lease, signed in October of 1991,
further provided that Walker Sand would have the right, but not the duty, to
excavate 93 acres of the Property to a depth of 35 feet and to move any
unmarketable material without payment of royalty.  Ellington Dirt approved this Amended Lease
after Camille Butler[3]
and Ed Robeau were elected as directors of the
corporation.  After this amendment, the
Basses amended their pleadings to add Butler and Robeau
as defendants, alleging, among other things, that Butler and Robeau breached their fiduciary duties as directors by
approving the Amended Lease.  Later, the
Basses added Olshan Demolishing Company, Inc. and
Phillips Petroleum Company as defendants and also asserted additional claims,
including an allegation that Walker Sand breached the Original Lease.  Appellees/defendants
filed a counterclaim against the Basses and Campbell for expenses under article
5.14, section F, of the Texas Business Corporation Act
(Aarticle
5.14F@).  

This case first went to trial in
May of 1996.  On the second day of trial,
Phillips and Olshan settled for $150,000, which went
to Ellington Dirt, after deduction for certain fees and expenses.  Before submission to the jury, the trial
court granted a directed verdict to Walker Sand on all claims except breach of
the lease and negligence.  The trial
court also granted a directed verdict on all claims against Butler and Robeau.  The jury
considered the remaining issues and found Walker Sand breached the lease;
however, the jury found the breach was excused. 
The jury found no breach of fiduciary duty on the part of Delbert Walker
and no negligence on the part of Walker Sand. 
Finally, as to the counterclaim under article 5.14F, the jury found
Campbell and the Basses brought this shareholder derivative suit without
reasonable cause.  

The parties agreed to try the
amount of attorney=s fees to the court.  Based on its rulings and the jury=s
findings, the trial court entered judgment in favor of appellees
on their counterclaim in the amount of $411,499.  The Basses and Campbell appealed to this
court.  In an unpublished opinion, this
court affirmed in part and reversed and remanded in part based on the following
holdings: (1) the trial court, not the jury, must determine whether the Basses
and Campbell filed this suit Awithout reasonable cause@; (2) the
trial court=s failure
to conduct a bench trial regarding appellees= counterclaim
was reversible error; (3) the trial court did not reversibly err when it
overruled the plaintiffs= objections to the jury question
regarding excuse of Walker Sand=s breach; (4) there was sufficient
evidence that Walker Sand was excused from performing under the Original Lease
based on the Amended Lease; and (5) the trial court properly granted a directed
verdict in favor of Butler and Robeau.  This court remanded the case in part for a
bench trial on the article 5.14F issues.








On remand, Campbell settled with appellees for $100,000 and relinquishment of his
stock.  After conducting a bench trial,
the trial court ruled in favor of appellees on their
counterclaim, found the Basses had filed the derivative suit without reasonable
cause, and awarded appellees a total of $311,449 C the same
amount of attorney=s fees and expenses awarded in the
first judgment minus the $100,000 settlement credit. 

                                                          Issues Presented

On appeal, the Basses present the
following issues:

!         Did the trial court err in awarding attorney=s fees under article 5.14F
of the Texas Business Corporation Act because the Basses had Areasonable cause@ to bring a shareholder
derivative suit as a matter of law?

!         Is the evidence legally sufficient or, alternatively,
factually sufficient to support the trial court=s finding that this shareholder derivative suit was
brought Awithout reasonable cause@ under article 5.14F of the
Texas Business Corporation Act?

!         Do the trial court=s findings support its conclusion that the Basses
brought this shareholder derivative suit Awithout reasonable cause@ under article 5.14F of the
Texas Business Corporation Act?

!         Did the trial court err in failing to properly allocate all
offsets and settlement credits to which the Basses were entitled?

 

                                                     Standard of Review

Article 5.14F provides that, upon
final judgment for one or more defendants and upon a finding that the
plaintiffs brought suit against those defendants Awithout
reasonable cause,@ the trial
court Amay . . .
require the plaintiff to pay expenses to such defendants.@  Act of May 26, 1973, 63d Leg., R.S., ch. 545, ' 37, 1973 Tex. Gen. Laws 1486,
1508B09 (amended
1997) (current version at Tex. Bus. Corp. Act Ann. art.
5.14(J)(1)(b) (Vernon Supp. 2002)).  Therefore, article 5.14F affords the trial
court a measure of discretion in deciding whether to award attorney=s
fees.  See Bocquet
v. Herring, 972 S.W.2d 19, 20 (Tex. 1998); Pace  v. Jordan, 999 S.W.2d 615,
625B26 (Tex.
App.CHouston
[1st Dist.] 1999, pet. denied). 
Accordingly, we review the trial court=s ruling
on a request for expenses under article 5.14F for an abuse of discretion. See
Bocquet, 972 S.W.2d at 20B21; Pace,
999 S.W.2d at 625B26.     Generally,
the test for abuse of discretion is whether the trial court acted without
reference to any guiding rules and principles or whether the trial court acted
arbitrarily and unreasonably.  See
McDaniel v. Yarbrough, 898 S.W.2d 251, 253 (Tex.
1995).  However, under article 5.14F, the
district court=s
discretion is limited by the requirement that the plaintiffs have brought suit
without reasonable cause.  See Act
of May 26, 1973, 63d Leg., R.S., ch. 545, ' 37, 1973
Tex. Gen. Laws at 1508B09; Bocquet,
972 S.W.2d at 20B21.  Therefore, the trial court abuses its
discretion if it awards expenses under article 5.14F without legally and
factually sufficient evidence that the plaintiffs have brought suit without
reasonable cause.  See Bocquet, 972 S.W.2d at 20B21;
Weingarten Realty Inv. v. Harris Cty. App. Dist.,
CS.W.3dC, 2002 WL
1746743, at *2 (Tex. App.CHouston
[14th Dist.] July 25, 2002, no pet. h.); Hunt v.
Baldwin, 68 S.W.3d 117, 135 n.8 (Tex. App.CHouston
[14th Dist.] 2001, no pet.); Pace, 999 S.W.2d at 625B26.

In conducting a legal‑sufficiency
analysis, we review the evidence in a light that tends to support the disputed
findings and disregard all evidence and inferences to the contrary.  Lee Lewis Constr., Inc. v. Harrison, 70 S.W.3d 778, 782 (Tex.
2001).  If more than a scintilla of
evidence exists, it is legally sufficient. 
Id.  More than a scintilla
of evidence exists if the evidence furnishes some reasonable basis for
differing conclusions by reasonable minds about a vital fact=s
existence.  Id.
at 782B83.  








When reviewing a challenge to the
factual sufficiency of the evidence, we examine the entire record, considering
both the evidence in favor of, and contrary to, the challenged finding.  Cain v. Bain, 709
S.W.2d 175, 176 (Tex. 1986). 
After considering and weighing all the evidence, we set aside the fact
finding only if it is so contrary to the overwhelming weight of the evidence as
to be clearly wrong and unjust.  Pool v. Ford Motor Co., 715 S.W.2d
629, 635 (Tex. 1986). 
The trier of fact is the sole judge of the
credibility of the witnesses and the weight to be given to their
testimony.  GTE Mobilnet
of S. Tex. v. Pascouet, 61 S.W.3d 599, 615B16 (Tex.
App.CHouston [14th Dist.] 2001, pet.
denied).  Because we are not the fact
finder, we may not substitute our own judgment for that of the trier of fact, even if we would reach a different answer on
the evidence.  Maritime
Overseas Corp. v. Ellis, 971 S.W.2d 402, 407 (Tex. 1998).  The amount of evidence necessary to affirm a
judgment is far less than that necessary to reverse a judgment.  Pascouet, 61 S.W.3d at 616. 

                                                                    Analysis

   Did the trial court
abuse its discretion by awarding expenses under article 5.14F?

                                                              Preservation
of Error

The
Basses complain on appeal that the trial court abused its discretion because
there was legally and factually insufficient evidence that they
brought suit without reasonable cause.  Appellees assert the Basses failed to preserve error under
Texas Rule of Appellate Procedure 33.1 because the Basses did not assert these
complaints in the trial court.  See Tex. R. App. P. 33.1.  We disagree.  When appealing from a bench trial, an
appellant is not required to preserve error in the trial court regarding
complaints that the evidence was legally or factually insufficient. See Renteria v. Trevino, 79 S.W.3d 240, 241B42
(Tex.
App.CHouston [14th Dist.] 2002, no pet.); O=Farrill Avila v. Gonzalez, 974
S.W.2d 237, 248 (Tex. App.CSan Antonio 1998, pet.
denied).  Furthermore, the Basses
asserted these complaints in the trial court in their objections to the
proposed findings of fact that the court later adopted.  The Basses preserved
error.

                                                        Law-of-the-Case
Argument

Appellees also
assert that, under the law-of-the-case doctrine, the Basses cannot attack the
legal sufficiency of the evidence because this court decided that issue against
them in the first appeal in this case. 
We disagree.  Although the
appellants in the first appeal did challenge the legal sufficiency of the
evidence supporting the jury=s finding that the Basses had no
reasonable cause to bring suit, this court did not rule on that issue in the
first appeal.  Because this court did not
decide this issue in the first appeal, the law-of-the-case doctrine does not
prevent the Basses from asserting the issue now.  See Hudson v. Wakefield, 711 S.W.2d 628, 630 (Tex. 1986).

                                                Merits
of the Basses= First Two Issues

In the
first two issues, the Basses assert that the trial court abused its discretion
in awarding expenses under article 5.14F because there was legally or, in the
alternative, factually insufficient evidence to support the trial court=s finding
that the Basses brought this suit without reasonable cause.  As a preliminary matter, we must decide the
legal standard to be applied to determine whether the Basses brought suit
without reasonable cause under article 5.14F. 
This appears to be an issue of first impression in Texas.  

The Basses assert that Awithout
reasonable cause@ should be interpreted as a
subjective standard, requiring a finding that the plaintiff knew the suit was
groundless at the time he filed it.  We
disagree and hold that a plaintiff acts without reasonable cause under article
5.14F if, at the time he brings suit: (1) the claims asserted by the plaintiff
in the lawsuit are not warranted by existing law or a good faith argument for
the extension, modification, or reversal of existing law; or (2) the
allegations in the plaintiff=s suit are not well grounded in
fact after reasonable inquiry.  See
Tex. Bus. Corp. Act
Ann. art. 5.14J (1)(c)
(Vernon Supp. 2002) (defining standard for requiring parties to pay the
expenses of another party under amended Business Corporation Act that took
effect on September 1, 1997); Tex. Civ. Prac. & Rem Code ' 10.001 B .006
(describing circumstances under which trial court may order party to pay
attorney=s fees and
expenses to another party as a sanction); Tex.
R. Civ. P. 13 (defining Agroundless@);  Randolph
v. Walker, 29 S.W.3d 271, 277B78 (Tex.
App.CHouston
[14th Dist.] 2000, pet. denied) (involving groundlessness under Texas Rule of
Civil Procedure 13); Selig v. BMW of N.
Am., Inc., 832 S.W.2d 95, 103 (Tex. App.CHouston
[14th Dist.] 1992, no writ) (involving groundlessness under DTPA).








Under this legal standard, we
conclude that the evidence at trial was legally and factually sufficient to
support the trial court=s finding that the Basses brought
suit without reasonable cause.  The
Basses assert there was Aabsolutely no evidence@ to
support this finding because (1) at the time they brought suit, Walker Sand had
breached the Original Lease, as shown by the jury=s finding
that Walker Sand breached the Original Lease; (2) the Basses recovered $150,000
for Ellington Dirt as a result of settling their claims against Phillips and Olshan in this suit; (3) the Basses investigated the
allegations in the original petition before bringing suit, as shown by various
steps that they took to determine if materials from Phillips had been dumped on
the Property; (4) before filing suit, the Basses reviewed the provisions of the
Original Lease and consulted with three attorneys about the merits of this
suit; (5) the Basses discussed concerns about the dumping of Phillips material
on the Property with Robeau; and (6) the Basses sent
a November 9, 1990 demand letter to Walker as agent for the board of directors.








As to Walker Sand=s alleged
breach of the Original Lease, the Basses argue that the parties had not yet
amended the Original Lease when the Basses filed suit and that the breach the
jury found therefore had not yet been excused. 
The Basses emphasize that their primary allegation was that Walker Sand
had breached the Original Lease.  We disagree.  As previously noted, the original petition
makes no reference to the Original Lease, nor does it contain any claim for
breach of that lease.  In the original
petition, the Basses stated that Delbert Walker and Walker Sand had used the
Property and allowed others to use the Property for their own financial gain,
without compensating Ellington Dirt.  The
Basses also alleged that these uses of the Property had greatly impaired its
market value and subjected the Aowners [sic] of the [Property]@ to
increased liability.  The demand letter
the Basses sent before filing suit does not refer to the Original Lease or any
breach of it.  The only conduct the
Basses complain of in this letter is Ellington Dirt=s failure
to file suit against Walker Sand Aand any
and all other parties responsible for the dumping of refuge [sic], garbage,
concrete, waste, poles, containers and other debris on the [Property].@  The letter states that A[t]his >dumping= activity
has significantly depreciated the value of the corporation=s one
major asset and has opened the door to potential liability in the event any of
the waste or refuse is toxic.@ 
Though the Basses later amended the petition to assert breach of the
Original Lease, the determination under article 5.14F is made as of the time
that they brought suit C February 28, 1991.[4]  See Act of May 26, 1973, 63d Leg.,
R.S., ch. 545, ' 37, 1973
Tex. Gen. Laws at 1508B09.  The demand letter, the evidence at trial, and
the language of the original petition all show that the Basses= primary
concern was that there might be significant environmental liability because of
the dumping of the Phillips materials on the Property.  








Nonetheless, Edward Bass testified
at trial that, at the time of his deposition in May  of 1995, the only information he had
was that the material dumped on the Property from the Phillips site was Aconcrete,
rebar and dirt.@ 
There was evidence that, before May of 1995, the Basses=
environmental expert had visited the Property, taken samples, had tests
performed, and issued a report.  Edward
Bass also testified to the following at this deposition:  (1)  as of 1992, he had not asked anyone to
do any kind of study to determine whether the activities on the Property were
dangerous, toxic, or in violation of any laws; (2) he filed this suit without
doing any tests to find out whether the activity on the Property violated any
laws; and (3) he had no knowledge that this concrete, rebar, and dirt was ever
in contact with contaminated water. 
Walker testified that he invited Campbell, the Basses, and any other
stockholder to inspect the Property themselves or to bring their own experts to
test the Property to find out if there were problems, and there was testimony
from Campbell corroborating this invitation and his failure to accept it.  The evidence shows that, rather than attempt
to test the Property and evaluate the potential environmental liability, if
any, Edward Bass and Travis Campbell resigned as directors.  The Basses and Campbell then filed this
suit.  

When the Basses finally did send
an expert to examine the Property, the expert, Dianna Chianis,
performed what she described as a Aquick
look-see@ that did
not rise to the level of a Phase 1 environmental investigation and was not even
an investigation per se. Chiannis stated that Edward
Bass asked her to visually inspect the Property and take some samples.  She testified that the groundwater samples
she took exceeded maximum contaminant levels established by the Texas Natural
Resource Conservation Commission under Risk Reduction Rule Number 2, for
cleaning up sites to protect human health and the environment.  Chiannis concluded
in her report that industrial waste had been deposited onto the Property
improperly, without a permit; however, Chiannis
testified that she defines Aindustrial waste@ to mean Aanything
that comes from an industrial facility,@ including
dirt, cement, rebar, and water.  

Chiannis did not
do any corings or borings on the Property.  She testified that her soil samples had
acceptable levels of possible contaminants. 
She stated that she was never able to determine whether any of the
material she saw on the Property came from Phillips.  Chiannis stated
that the Risk Reduction Rules probably do not require remediation of the
Property.  She also testified that she
did not wash the backhoe she used to gather soil for sampling and testing and
that she did not know whether anyone else had done so.  








Appellees= expert,
William Wilson, performed a Phase 1 and a Phase 2 environmental investigation
for a nonparty who purchased part of the Property.  At the time that he performed his sampling
and testing, Wilson was not aware of this lawsuit and had not been retained by
any party.  Wilson performed more
extensive testing than Chiannis, including coring.
Wilson concluded that the Property had no contamination or pollution, that the
levels for over 300 chemical compounds were not above background limits, and
that none of the results were above the Texas industrial recommended action
level that would require reporting to an environmental agency.  Wilson testified that the maximum contaminant
level used by Chiannis for her groundwater sample was
a standard from the Safe Drinking Water Act. 
Wilson testified that this standard is a high standard to be used for
drinking water and that it was not a fair standard to use for water found on an
industrial property.  According to
Wilson, Safe Drinking Water Act levels are commonly below background
environmental levels.  Wilson criticized
the methods that Chiannis used to collect her
samples, stating, for example, that some of the water tested was laced with
paint and that Chiannis should have made sure the
backhoe was decontaminated before and after each sampling event.  Wilson testified that concrete and rebar are
not hazardous materials.  

We find there was sufficient
evidence that the Basses did not conduct a reasonable inquiry into whether the
allegations in the original petition were well grounded in fact.  Furthermore, we find that, upon such an
inquiry, they would have discovered that these claims were not well grounded in
fact because the dumping on the Property did not create any environmental
liability.  

The settlement with Phillips and Olshan is not material to whether the Basses had reasonable
cause to bring suit against Walker and Walker Sand because that settlement
involved different defendants and occurred after the Basses brought suit.  Though the Basses took some steps before suit
to investigate the dumping, this investigation showed only that
materials from Phillips had been dumped, not that this material was
hazardous or toxic or was likely to cause significant environmental
liability.  Likewise, though the Basses=
conversations with Robeau and their statements at two
meetings of shareholders show their concern that there might be environmental
liability because of the dumping of the Phillips materials, these conversations
are not strong evidence of a reasonable inquiry concerning the nature and
extent, if any, of that liability.








Jerre Frazier,
who has been Edward Bass=s attorney for approximately 36
years, testified that Edward Bass told him he had learned that materials from
Phillips had been dumped on the Property and that he was concerned about
environmental liability.  This exchange
is not strong evidence of a reasonable investigation either.  Although Frazier subsequently served as the Basses= counsel
of record for an Ainterim period,@ he did
not represent the Basses in the preparation and filing of the original
petition.  Frazier was living in
Nashville, Tennessee and practicing law there at the time the Basses filed this
suit.  Though Frazier did testify that
the defendants refused the Basses= requests
to conduct environmental testing on the Property, his testimony indicates that
this occurred after the Basses brought suit. 
Furthermore, Edward Peine, defense counsel for
Ellington Dirt, Robeau, and Butler, testified that he
repeatedly invited the Basses= counsel to inspect the Property
and that at least six times various lawyers for the Basses postponed
appointments to inspect the Property.  Peine testified that he also invited Frazier to inspect the
Property and that he did not oppose the Basses= request
for a court order to inspect the Property. 
Peine testified that Phillips and Olshan wanted the trial court to sign a court order for the
inspection and that this was the reason the trial court signed an order compelling
inspection of the Property.  








As for the claims in the original
petition against Delbert Walker, Walker testified that he always put the
interests of Ellington Dirt first. 
Counsel for the Basses also asserted in his closing argument that the
claims against the individuals C Walker, Butler, and Robeau C did not increase the attorney=s fees
incurred at all.  In addition, there was
evidence that the actions taken by Walker and Walker Sand were authorized or
ratified by the board of directors or a majority of the shareholders of
Ellington Dirt.  Though the Basses and
Campbell may have disapproved, they were minority shareholders, and thus
subject to being outvoted regarding corporate issues.  And though minority shareholders may properly
file derivative suits in certain circumstances, they may not seek to change
corporate policies of which they disapprove by filing derivative claims without
reasonable cause.  See Tex. Bus. Corp. Act Ann. art. 5.14;
Act of May 26, 1973, 63d Leg., R.S., ch. 545, ' 37, 1973 Tex. Gen. Laws at 1508B09.

Considering the evidence in a
light that tends to support the disputed findings and disregarding all evidence
and inferences to the contrary, we conclude that the record contains legally
sufficient evidence to support the trial court=s finding
that the Basses brought this suit without reasonable cause.  The evidence furnishes some reasonable basis
for differing conclusions by reasonable minds about whether (1) the negligence,
breach of fiduciary duty, bad faith, and fraud claims the Basses asserted in
the original petition were warranted by existing law or a good faith argument
for the extension, modification, or reversal of existing law or (2) the
allegations in the original petition were well grounded in fact after reasonable
inquiry.  See Lee Lewis Constr., Inc., 70 S.W.3d at 782; Hughes v. Houston
Northwest Med. Ctr., Inc., 680 S.W.2d 838, 843 (Tex. App.CHouston
[1st Dist.] 1984, writ ref=d n.r.e.)
(finding factually sufficient evidence to support
finding of no reasonable cause under article 5.14F when evidence showed that a
reasonable inquiry by plaintiffs before filing suit would have shown no
reasonable cause to bring a derivative suit). Considering and weighing all
evidence in the record, we conclude that the trial court=s finding
that the Basses brought suit without reasonable cause is not so
contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust.  See Cain, 709 S.W.2d at 176; Hughes, 680 S.W.2d at 843.  Therefore, the evidence is legally and
factually sufficient to support the trial court=s finding
that the Basses brought this suit without reasonable cause.   

The Basses do not assert that the
trial court abused its discretion in any way other than basing its ruling on
this finding that allegedly was not supported by legally or factually
sufficient evidence. Therefore, we hold that the trial court did not abuse its
discretion by awarding expenses under 5.14F. 
Accordingly, we overrule the Basses= first and
second issues.








                       Do
the Basses assert reversible error in the third issue?

In the
third issue, the Basses assert the trial court=s findings
of fact were not relevant to the issue of whether they brought suit without
reasonable cause.  The trial court found
that the Basses commenced this suit without reasonable cause and found the
amounts of  appellees=
expenses.  Presuming for the sake of
argument that the other findings were not relevant to appellees=
counterclaim under article 5.14F, the Basses still have not shown that this
alleged error probably caused the rendition of an improper judgment.  See Tex.
R. App. P. 44.1; Johnston v. McKinney Am., Inc., 9 S.W.3d 271,
277B78 (Tex.
App.CHouston [14th Dist.] 1999, pet.
denied).  Because the Basses have not
shown reversible error, we overrule the third issue.  

                         Did the Basses preserve
error as to the fourth issue?

In the fourth issue, the Basses
assert the trial court erred by giving a credit of only $100,000 rather than
$205,724.50, based on Campbell=s settlement.  However, the Basses do not cite and we have
not found any place in the record where they asserted this complaint in the
trial court.  Further, during closing
argument, the Basses= counsel specifically requested
that the trial court apply a settlement credit of $100,000 in the event the
court awarded expenses.  Therefore, the
Basses invited the trial court to make the alleged error they now assert on
appeal.  We conclude that the Basses have
not preserved error on their challenge to the settlement credit based on
Campbell=s
settlement.  See Tex. R. App. P. 33.1; Pascouet, 61 S.W.3d at 612, 620 (finding waiver when
party asserted as error action taken by trial court at party=s request
and also finding no preservation of error when party did not assert appellate
complaint regarding settlement credit in trial court).  








Under this issue, the Basses also
assert that the trial court erred by not giving them credit for $9,000 that appellees allegedly received from a security bond posted by
the plaintiffs.  The Basses= counsel
did state during closing argument that it was his understanding defendants had
drawn on a $9,000 security bond posted by plaintiffs.  However, the Basses did not complain of the
failure to credit this amount in the judgment by any motion, objection, or
request, and the trial court did not rule on any such motion, objection, or
request, either expressly or impliedly. 
Therefore, the Basses also have failed to preserve error as to this
alleged credit.  See Tex. R. App. P. 33.1; Rush v.
Barrios, 56 S.W.3d 88, 106 (Tex. App.CHouston
[14th Dist.] 2001, pet. denied). 
Accordingly, we overrule their fourth issue.  

Having overruled all of the Basses= issues,
we affirm the trial court=s judgment.

 

/s/        Kem Thompson Frost

Justice

 

Judgment
rendered and Opinion filed November 7, 2002.

Panel
consists of Chief Justice Brister and Justices Anderson and Frost.

Publish
C Tex. R. App. P.
47.3(b).

 

 











[1]           Dr. Barfield=s shares were ultimately purchased by Walker.  





[2]  In the statement-of-facts
section of their brief, appellants state that they both filed this derivative
suit on February 28, 1991.  Appellees agree with this statement in their brief.  Therefore, we accept this statement as
true.  See Tex. R. App. P.
38.1(f).  Further,
because appellants do not distinguish between Edward Bass and Cary Bass in
their arguments on appeal, we will generally refer to appellants collectively
as the ABasses.@  





[3]  Butler
acquired her shares in Ellington Dirt upon the death of her husband, Dr. E. C.
Butler,  one of
the original investors.  





[4]  The Basses
agree in their brief that the time frame for this inquiry is the date they
brought suit.  Further, the evidence at
trial showed, and the Basses agreed in the trial court and on appeal, that
adding Butler and Robeau to this suit did not
increase the amount of attorney=s fees incurred at all.  Therefore, we do not address whether the
Basses had reasonable cause to bring suit against Butler and Robeau.