Opinion issued December 11, 2003











  
 






In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-03-00395-CV
____________
 
ROBERT J. YETMAN, M.D., Appellant
 
V.
 
THOMAS G. CLEARY, M.D. AND WILLIAM J. RILEY, M.D., Appellees
 

 
 
On Appeal from the 333rd District Court
Harris County, Texas
Trial Court Cause No. 9956719
 

 
 
MEMORANDUM OPINION
          In this accelerated, interlocutory appeal,


 Robert J. Yetman, M.D. argues that
the trial court erred in denying Yetman’s official immunity motion for summary
judgment filed in response to a defamation suit brought by appellees, Thomas G.
Cleary, M.D., William J. Riley, M.D., Steven J. Culbert, M.D., and Steven B. Wolfe,
M.D. (collectively “the Plaintiffs”). We affirm.
Factual and Procedural Background
          Milliman & Robertson, Inc. (M&R), an actuarial and publishing firm that
provides actuarial and consulting services to the insurance industry, developed
various medical utilization guidelines—M&R Care Guidelines. These care guidelines
provide, among other items, criteria for evaluating whether a medical
procedure/treatment is necessary, whether in-patient or out-patient treatment is
necessary, and “goal lengths of stay” which define the length of stay necessary for in-patient and surgical care. 
          In 1997, M&R collaborated with Dr. Yetman, a tenured faculty member in the
Department of Pediatrics at the University of Texas Heath Science Center at Houston
(UT-Houston), to publish pediatric care guidelines. Yetman was to lead the
guidelines project, and UT-Houston and M&R entered into an agreement wherein
UT-Houston would be paid by M&R, and then, UT-Houston was to compensate
Yetman for his services on the project. In addition, UT-Houston received a $100,000
grant from M&R. 
          Yetman, as the lead contributing author and project coordinator, wrote the first
drafts of the various sections and then distributed the drafts to his colleagues for
editing and commentary. This was the method Yetman used in creating the sections
dealing with infections diseases, endocrinology, hematology, and cardiology. Dr.
Cleary’s edits and contributions concerning infectious diseases and the circumstances
requiring a consultation with an infectious disease specialist were published in the
1998 version of M&R’s Health Status Improvement & Management: Pediatrics
(HSIM) as were Dr. Riley’s contributions concerning out-patient guidelines for
diabetes mellitus. Dr. Culbert reviewed and modified the oncology guidelines and
reviewed the section concerning the need for consultation with an
oncologist/hematologist, and Dr. Wolfe reviewed the section concerning consultation
with a cardiologist. 
          The HSIM acknowledged 17 individuals for their contributions to the work. 
Four of those “contributors,” Drs. Cleary, Riley, Culbert, and Wolfe sued Yetman and
M&R for defamation/libel/defamation per se, misappropriation of name, unfair
competition, tortious interference with employment contract, business disparagement,
civil conspiracy, violation of the Texas Theft Liability Act, fraud and deceit. 
          The Plaintiffs alleged that some of M&R’s Care Guidelines that received
unfavorable public notoriety included the following, as quoted from the plaintiffs’
petition:
(a)You can’t have a cataract removed in more than one eye unless
you are fairly young and need both eyes for work;
 
(b)You can’t be admitted to a hospital for a mastectomy;
 
(c)You can’t stay in a hospital more than one day after a normal
delivery, or two days after a caesarean;
 
(d)You can’t see a neurologist for epileptic seizures unless
anticonvulsant drugs fail, although the neurologist is allowed to
read your brain-wave test;
 
(e)You can’t have your stomach surgically reduced unless you are
100 pounds overweight;
 
(f)You can’t stay in the hospital more than three days for most
strokes, even if you can’t walk out;
 
(g)You can’t have a heart bypass unless you have chest pain,
reduced heart pumping, and narrowing of all three major blood
vessels, or a narrowing of two major vessels and recurrent chest
pain after the strongest drugs have failed; and
 
(h)You can’t have a tonsillectomy unless you have suspected cancer
or six documented cases of tonsilitis in a year despite antibiotics
or breathing blockage during sleep.

The Plaintiffs alleged that M&R’s one-day limit for uncomplicated deliveries was met
with such an uproar that the United States Congress and 41 states subsequently
passed laws overriding so-called “drive through deliveries.”
          Dr. Yetman filed a motion for summary judgment on the grounds of official
immunity and contended that he was performing discretionary duties in good faith
while acting within the scope of his authority. See City of Lancaster v. Chambers,
883 S.W.2d 650, 653 (Tex. 1994).
          The Plaintiffs attached several affidavits as evidence in response to Yetman’s
motion for summary judgment. In his affidavit, Dr. Culbert testified that he is an
associate professor of pediatrics at the University of Texas - M.D. Anderson Cancer
Center, Department of Pediatrics. He testified that Yetman asked him to review the
section on iron deficiency. Culbert commented on the section, returned it to Yetman,
and informed Yetman that “the chemotherapy section was basically useless.” Culbert
testified that he did not authorize anyone to list him as a contribuing author, and, after
he reviewed the Pediatric HSIM, he told Yetman to remove Culbert’s name from the
book. Further, Culbert testified that he and Dr. Slopis contacted Dean Buja, the Dean
of UT-Houston, and told him that Culbert and Slopis’s names had been improperly
listed as contributing authors and that they wanted their names removed from the
publication. 
          Dr. Wolfe, a board-certified pediatrician and pediatric cardiologist, testified by
way of affidavit that he was an assistant professor of pediatrics at UT-Houston,
Department of Pediatrics. He testified that, despite being listed as a contributing
author on the publication, at no time did Yetman obtain Wolfe’s permission or
approval to be listed as such. Wolfe stated that Yetman had approached him and
asked him to co-author and review transcripts of protocols for cholesterol and
hypertension for the residents at Hermann Hospital. Wolfe agreed, but he refused to
write additional summary paragraphs describing treatment/evaluation of heart
murmurs, palpitations, syncope, chest pain and heart failure for the residents, as
Yetman had requested, because, as Wolfe told Yetman, “to do so would be
dangerous.” Wolfe testified that Yetman represented to Wolfe that his assistance was
sought in connection with the residents at Hermann Hospital, and, had Yetman
informed Wolfe “of the true use of the protocols, [Wolfe] would have refused.” 
Further, Wolfe testified that he told Dr. John Sparks, the chairman of the department
of pediatrics at UT-Houston, that Wolfe had not authorized anyone to list him as a
contributing author of the Pediatric HSIM Guidelines and that he was under the
impression, based on Yetman’s representations, that the information was for the
benefit of the Hermann Hospital residents only.
          The summary judgment evidence also included an affidavit from Dr. Cleary,
board-certified in pediatrics and pediatric infectious diseases, tenured professor of
pediatrics at UT-Houston. Cleary testified that, as a result of the improper and
unauthorized listing and attribution of him as a contributing author to the HSIM, his
staff was reduced, his individual workload increased, he had been subjected to
improper and increased review and oversight, and he was denied salary increases and
bonuses afforded other division heads. 
          As further summary judgment evidence, the Plaintiffs attached an internal
M&R memorandum, dated March 13, 1997, from Jim Turner to David Axene and
Dennis Hulet. The memo outlined the preliminary product design, work plan, and
budget request for the Pediatric HSIM. In this document, Turner stated that 
[s]ince Dr. Yetman works full-time at the University of Texas (UT), we
needed commitment from him that he could devote the number of hours
needed in the desired timeframe for completion. My preference would
be to employ him full-time (he will make an excellent healthcare
management consultant); however, his other interests and his
commitment to teaching made it difficult for him to commit to
employment with M&R at this time. He told me that he would speak
with his Chairman to discuss his interest in working part-time for both
M&R and UT.

          . . . .
 
Dr. Sparks suggested a grant figure of around $100,000 to the
department of pediatrics plus an acknowledgment in the HSIM
publications. [M&R] would pay Dr. Yetman for direct hours at $187.50
per hour.” 

Also attached as evidence was a professional services agreement dated September
1,1998, between M&R and UT-Houston for “the professional services of Dr. Robert
Yetman.” The agreement designated that, during his “affiliation” with M&R, Yetman
would be an independent contractor. M&R agreed to pay UT-Houston $6500 per
month for Yetman’s services, and UT-Houston agreed to compensate Yetman “for the
services” he provided M&R. The agreement was signed by a representative from
M&R and UT-Houston as well as by Drs. Yetman and Sparks.
          The trial court denied Yetman’s motion for summary judgment on the ground
of official immunity.
Official Immunity
          In his sole point of error, Dr. Yetman argues that the trial court erred in denying
his motion for summary judgment based on official immunity.
Standard of Review 
          We will uphold a summary judgment only if the record establishes that there
is no genuine issue of material fact, and that the movant is entitled to judgment as a
matter of law on a ground set forth in the motion. See Tex. R. Civ. P. 166a(c);
Cathey v. Booth, 900 S.W.2d 339, 341 (Tex. 1995). The same standard of review that
governs the granting of a summary judgment applies to the denial of a summary
judgment. San Antonio Express News v. Dracos, 922 S.W.2d 242, 247 (Tex.
App.—San Antonio 1996, no writ). A defendant who conclusively establishes all the
elements of an affirmative defense is entitled to summary judgment. Cathey, 900
S.W.2d at 341. In reviewing the summary judgment, we indulge every reasonable
inference in favor of the non-movant, resolve any doubts in its favor, and take as true
all evidence favorable to it. Pace v. Jordan, 999 S.W.2d 615, 619 (Tex.
App.—Houston [1st Dist.] 1999, pet. denied). 
          Official immunity is an affirmative defense that protects government
employees from personal liability. Univ. of Houston v. Clark, 38 S.W.3d 578, 580
(Tex. 2000). When official immunity shields a governmental employee from liability,
sovereign immunity shields the governmental employer from vicarious liability. Id. 
A governmental employee is entitled to official immunity: (1) for the performance
of discretionary duties; (2) within the scope of the employee’s authority; (3)
provided that the employee acts in good faith. Id. Because official immunity is an
affirmative defense, to obtain summary judgment on official immunity, the
governmental employee must conclusively prove each element of the defense. See
Kassen v. Hatley, 887 S.W.2d 4, 8-9 (Tex. 1994). 
Course and Scope
          To prevail on his motion for summary judgment based on official immunity,
Yetman was required to conclusively prove that, among other things, he was in the
course and scope of his duties as an employee of UT-Houston when the alleged tort
occurred. See id. 
          The Plaintiffs’ summary judgment evidence raised a fact question as to whether
M&R paid Yetman, individually, as an employee or agent, for the services he
provided to M&R. Further, Yetman stated in his motion for summary judgment that,
“accepting for the purposes of summary judgment only that Dr. Yetman was M&R’s
employee and agent, the conspiracy claim fails because a corporation cannot conspire
with itself.” It appears as though Yetman was trying to convince the trial court that
Yetman was M&R’s employee in an attempt to defeat the conspiracy claims, but he
denied being M&R’s employee when discussing the course and scope elements of
official immunity. 
          We hold that the record, at the very least, raises a fact question as to the
capacity in which Yetman was working when he committed the alleged torts.
          We overrule Yetman’s sole point of error.
Conclusion
          We affirm the trial court’s order denying Yetman’s official immunity motion
for summary judgment.
 
                                                                        George C. Hanks, Jr.
                                                                        Justice

Panel consists of Justices Taft, Jennings, and Hanks.